UNITED STATES of America,
Plaintiff–Appellee,

v.

Linda SMITH, also known as Deborah
Marie Howard, Defendant–Appellant.

No. 89–2126.

United States Court of Appeals,
Seventh Circuit.

Submitted March 12, 1990.*

Decided March 21, 1990.

Thomas M. Durkin, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Carl P. Clavelli, Schiller Park, Ill., for defendant-appellant.

Before BAUER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R. App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal is submitted on the briefs and record.

PER CURIAM.

Linda Smith, also known as Deborah Marie Howard, pleaded guilty to three counts of a forty count indictment. Her plea was accepted, and she was found guilty of conspiring with Jerome Banks and Ernestine McCall to use counterfeit "access devices" (i.e., credit cards) to defraud, in violation of 18 U.S.C. § 1029, the fraud involving more than $200,000. She was also found guilty of fraudulent use of a counterfeit credit card in violation of 18 U.S.C. § 1029 on two specific occasions. She was sentenced to twelve months' imprisonment, and was ordered to make restitution in the amount of $127,000, if feasible.

Smith is a member of the Black Hebrews religious sect. The sect believes itself to be the remnants of the lost tribe of Israel. As such, they seek to return to their ancestral homeland in Israel, and they appear to believe that illegal means are justified to achieve that end. Jerome Banks would manufacture counterfeit credit cards and then send Smith, under various aliases, to use them to purchase airline tickets for sect members. The tickets were usually for destinations in Israel or Liberia. On some occasions, Banks would order the tickets himself under a false name. They purchased the airline tickets from Ernestine McCall (another member of the sect) at the Travel With Us travel agency, and McCall was not too careful about checking the identity of her customers. Sometimes Smith would sign the universal credit charge slips using the false name on the card, and other times the slips were simply marked "client agrees to charges." Smith and Banks also made use of the false cards for personal expenses.

The dispute in this case concerns the application of the sentencing guidelines of the Sentencing Reform Act to Smith's conduct. All parties agree that the appropriate Guideline to apply is § 2F1.1, which covers crimes of fraud and deceit. The base offense level for such a crime is Level 6, and it is increased according to the amount lost by the victims of the fraud, and may also be increased if the offense required more than minimal planning. Smith argues that the district court erred by finding that the loss to the victims from Smith's criminal conduct was $272,000, calling for an increase of 7 levels.[1] She believes the appropriate loss figure is considerably less.

The government presented the $272,000 figure in its version of the offense presented to the probation officer for inclusion in the presentence investigation report, and again in its sentencing memorandum to the district judge. The figure represents all charges made by Smith or Banks during the time period of the charged conspiracy. The component charges are not a part of the record. While the government insisted on its $272,000 figure, Smith argued that she should be responsible only for the credit slips she actually signed, which amounted to $42,241.64. In the alternative, she argued that the figure should be no more than $128,000, which covered all of the travel agency charges. She did not dispute that the total loss from all charges made by Smith or Banks was in fact $272,000.

■ The district court rejected the $42,-000 figure as not adequately reflecting Smith's actual involvement in the scheme. Even for the slips marked "client agrees to charges," Smith had signed for the tickets and made all the other arrangements. The more difficult question was whether to use the charges made by both Banks and Smith, or just Smith's charges. As the district court saw it, if the smaller amount were used, the offense level would increase by 6. If the larger amount were used, the level would increase by 7, but would immediately be reduced by two levels to reflect a lesser role in the offense. § 3B1.2(b). The court chose the latter approach, and that choice was correct. The crime to which Smith pleaded guilty was conspiracy. Under § 1B1.3(a)(1), the appropriate Guideline range is to be determined with reference to "all acts and omissions committed or aided

---

1. The Guideline has since been amended. For a loss between $200,001 and $350,000 the base offense level is now to be increased by 8 levels.

Losses between $120,001 and $200,000 call for an increase of 7 levels.

and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense." The Application Notes make it clear that not all crimes by co-conspirators are to be considered, but only conduct which the defendant could reasonably foresee in connection with the conspiracy. The district court found that Banks' acts were foreseeable, and that Smith was therefore responsible for the full $272,000. This finding of fact is given great weight in this court. 18 U.S.C. § 3742(e); *United States v. White*, 888 F.2d 490, 495 (7th Cir.1989).

The district court took the base offense level of six, § 2F1.1(a), and increased it by seven for the loss to the victims of $272,-000. § 2F1.1(b)(1)(H). The level was further increased by two levels because more than minimal planning was required. § 2F1.1(b)(2). There was a reduction of two levels because Smith had only a minor role in the larger conspiracy, § 3B1.2(b), and an additional two levels for her acceptance of responsibility. § 3E1.1. The adjusted offense level, then, was 11. Given Smith's criminal history category of II, the Guidelines called for a sentence of 10 to 16 months, and the district court sentenced her to a 12–month term.

On appeal, Smith presses two claims. First she argues that she was never given an opportunity to rebut the $272,-000 figure. This is simply not correct. The figure was contained in the presentence investigation report, and its accuracy was conceded by counsel at the final sentencing hearing on May 18, 1989. Smith complains that the charges included in that figure were never substantiated, but the record is devoid of any demand in the district court that the government detail its calculation. Smith may not make such a demand for the first time on appeal.

Second, Smith argues that her conduct was no more culpable than that of Ernestine McCall, who was sentenced to only one month of work release plus a period of probation. Of course, McCall's conduct has no effect on the correct calculation of Smith's offense level. We have no jurisdiction to review McCall's sentence, because only Smith has appealed. Nothing

in 18 U.S.C. § 3742(a) (under which this appeal was taken) allows review of a sentence imposed in conformity with the Guidelines on grounds that a codefendant was treated differently. Even under pre-Guidelines sentencing procedure, disparity among sentences received by codefendants was grounds for reversal only if the judge did not give "thoughtful consideration" to the matter. *United States v. Nowicki*, 870 F.2d 405, 409 (7th Cir.1989). It is plain that, even under that standard, there are no grounds for reversal. The district court found McCall's conduct to be less heinous than Smith's, and that finding can be reversed only if it is clearly erroneous. 18 U.S.C. § 3742(e). It is not clearly erroneous. McCall's involvement was qualitatively different from Smith's. Smith is the one who presented the counterfeit credit cards; McCall merely accepted them. The district court found that McCall did not know from the beginning, as Smith did, that the cards were fakes. The court could reasonably find, then, that McCall was not responsible for as much loss as was Smith. But, as we said, that fact really does not matter under present law. What matters is that Smith's conduct and criminal history called for a sentence between ten and sixteen months under the Guidelines. The sentence imposed by the district court is within that range, and the judgment is therefore

AFFIRMED.