UNITED STATES of America,
Plaintiff–Appellee,

v.

Folashade OJO, also known as Antinuke
Morenike Witherspoon,
Defendant–Appellant.

No. 89–2865.

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1990.

Decided Oct. 18, 1990.

Matthew L. Jacobs, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Marvin Bloom, Jeffrey B. Steinback, Geena D. Cohen, Genson, Steinback & Gillespie, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., POSNER, and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Antinuke Morenike Witherspoon, a/k/a Folashade Ojo, was convicted of using a false Social Security Number with intent to deceive, in violation of 42 U.S.C. § 408(g)(2), pursuant to a plea agreement, and was sentenced to five months' imprisonment to be followed by five months in a community treatment center. She appeals the enhancement of her sentence above the base offense level recited in her plea agreement, as well as the court's refusal to grant her requested two point reduction. We affirm.

## I.

### Facts

On March 31, 1989, Antinuke Witherspoon[1] falsely identified herself as Folashade Ojo while attempting to open a checking account at the First Wisconsin National Bank in Milwaukee, Wisconsin, but was denied the privilege of opening the account because bank officials were not satisfied with her identification credentials. At the time of her application she provided bank personnel with a false Milwaukee County (Wisconsin)-issued Identification Card[2] as well as a false Milwaukee Area Technical College identification card (she was never a student at that institution).

Subsequently, after being denied the checking account at the First Wisconsin National Bank, Witherspoon next obtained a false State of Wisconsin-issued Identification Card. In obtaining this identification she again used the assumed name of Folashade Ojo, falsely claiming that she lived at 2919 West Wisconsin Avenue in Milwaukee, also falsely stating that she was a student at Marquette University, and also offered a fictitious Social Security Number and birth date.[3] The offer of proof at

---

1. Antinuke Witherspoon is the married name of the defendant-appellant. She is a Nigerian national, whose name before marriage was Antinuke Morenike Koye. After coming to the United States she married a United States citizen, Charles Witherspoon. The defendant was charged under the false name Folashade Ojo, as this was the name used when committing the offense charged. We refer to the defendant-appellant by her true name, Antinuke Witherspoon, throughout the opinion.

2. At the time of Witherspoon's offense, there were two types of Identification Cards in the state of Wisconsin. The State Identification Card was a card issued in each County under the authority of the Wisconsin Attorney General pursuant to Wis.Stat. § 125.08 (1985). This

card did not contain a photograph of the holder and was intended primarily to be used in proving whether a person was of legal drinking age. The issuance of this type of card was discontinued effective January 1, 1990. The Wisconsin Identification Card is an identification card issued to non-drivers by the Wisconsin Department of Transportation pursuant to Wis.Stat. § 343.50 (1987). An applicant is required to provide a birth certificate to obtain this card, and the card includes a photograph of the cardholder. For clarity, we refer to these cards as the "County-issued Identification Card" and the "State-issued Identification Card."

3. In the various situations where Witherspoon falsely identified herself, she consistently pro-

Witherspoon's plea acceptance hearing recited that a representative of the Wisconsin Department of Transportation would have testified that Witherspoon would have been asked to provide a birth certificate as proof that the information she provided in obtaining the State of Wisconsin-issued Identification Card. On her application to the Milwaukee County Register of Deeds for her County-issued Identification Card, she also fraudulently listed her address as 2919 West Wisconsin Avenue in Milwaukee as well as providing a fictitious date of birth.

Witherspoon utilized her recently issued State Identification Card to open a checking account at the First Interstate Bank in Milwaukee, Wisconsin,[4] providing the bank with a fictitious Social Security Number, 317–64–6622. Witherspoon further misled the bank using a false Marquette University identification card, although she never attended that university, and further she falsely represented that she lived at 2919 West Wisconsin Avenue in Milwaukee. She also presented the bank her false County-issued Identification Card, for identification purposes, also using the same fictitious name and address which she had provided to the previous bank.

Witherspoon was arrested on May 1, 1989, and indicted on a charge of using a false Social Security Number with intent to deceive, in violation of 42 U.S.C. § 408(g)(2), in opening the bank account at First Interstate Bank. Witherspoon was interviewed by a pre-trial services officer to provide information for setting the amount of her appearance bond. During this interview, she again provided false information as to her name, date of birth, length of residence in the United States, current address, family history, financial status and arrest record. The report was presented to the U.S. Magistrate, who relying on the false information, set a low appearance bond of $1,000. Shortly thereafter, the probation officer secured accurate information, and in turn requested

that the magistrate increase the bond requirement to $15,000, and he complied.

Witherspoon claims that the only reason she repeatedly used the fictitious identification was to avoid her husband, residing in Chicago, who had threatened her physically, as well as threatening to have her deported, because she refused to have an abortion. She stated she was interested in opening a bank account in Milwaukee under a fictitious name in order that she might transfer funds from the couple's joint checking account in Chicago to Milwaukee and utilize the money for her expected child without her husband's knowledge. Witherspoon's expected child was born December 20, 1989, thus she became pregnant, in all probability, some time during the month of March of 1989, at the time she opened the bank account. This was more than six months after she had initially obtained her first false identification (the County-issued I.D.), thus discrediting her alleged motive for obtaining the checking account.

Before trial, a written plea agreement was filed with the court, and the defendant and the prosecutors agreed that the base offense level applicable, under section 2F1.-1(a) was six. Witherspoon expressly stated in the plea agreement "that the agreement providing the base level may not reflect the defendant's adjusted offense level, offense level total, guideline range or ultimate sentence to be imposed on the defendant by the court. Specifically, the defendant and her attorney acknowledge and understand the base offense level does not reflect any applicable adjustment to the offense level." At the acceptance of the plea hearing, Witherspoon advised the court that she understood that the plea agreement applied only to the base offense level and not to the adjusted level. The court, after questioning, confident of her competency and the voluntariness of her plea, received evidence, and accepted her plea of guilty.

On August 18, 1989, Witherspoon was sentenced to five months' imprisonment fol-

---

vided different, randomly selected security numbers and birth dates.

**4.** On July 18, 1990, First Interstate Bank of Wisconsin officially changed its name to Norwest Bank Wisconsin.

lowed by an additional five months in a community treatment center. In determining the appropriate period of confinement under Sentencing Guidelines, the court agreed with the base offense level of six set forth in the plea agreement. Thereafter, the court increased her offense level to ten under § 2F1.1(b)(2)(A) because the court found that her offense involved "more than minimal planning"; further, the court adjusted her offense level two levels higher, from 10 to 12, pursuant to § 3C1.1, because of her obstruction of justice in giving false information to the pretrial services officer; the court refused to make a two-level reduction under § 3E1.1 based upon acceptance of responsibility, and refused to grant any downward departure from the twelve point adjusted offense level. Witherspoon appealed the district court's adjustments to her offense level.

## II.

### Discussion

In reviewing a district court's application of the Sentencing Guidelines, "we review a district court's factual findings in determining an appropriate criminal sentence for clear error." 18 U.S.C. § 3742(e); *United States v. White*, 903 F.2d 457, 460 (7th Cir.1990); *United States v. Jordan*, 890 F.2d 968, 972 (7th Cir.1989). We will affirm the decision of the district court "if it correctly applied the Guidelines to findings of fact that do not leave us with the definite and firm conviction that a mistake has been committed." *Jordan*, 890 F.2d at 972; *White*, at 460 (citation omitted).

### A.

### Enhancement—More than Minimal Planning

■ The first challenge to Witherspoon's sentence deals with the trial court's four-point enhancement because the offense involved "more than minimal planning," pursuant to Sentencing Guidelines § 2F1.1(b)(2)(A). The Sentencing Guidelines' general application principles demonstrated that " 'more than minimal planning' is deemed present in any case involving repeated acts over a period of time unless it is clear that each instance was purely opportune." Sentencing Guidelines, § 1B1.1, application note 1(f).

Witherspoon's trial judge enhanced her sentence four levels because of "more than minimal planning,"[5] referring to her use of a false Marquette University identification card, the false State-issued Identification Card, the false Milwaukee Area Technical College identification card, and the false County-issued Identification Card. Witherspoon argues that the details of the events fail to demonstrate "more than minimal planning" because she did not select any particular banks, any particular employees who might be misled, did not request temporary checks or open multiple accounts, but provided only random numbers and dates as her purported Social Security Number and birth date, which she would not even be able to verify later. The judge felt that "the fact that helter-skelter numbers were advanced by Ms. Witherspoon at the bank does not obliterate the other planning aspects of this transaction."

Witherspoon claims that each instance in which she falsely represented her identity was merely "an act of opportunity" and "was random." However, we have noted that she obtained her false County-issued identification card in September of 1988, more than six months prior to using it at First Interstate Bank to open a checking account, and more than six months prior to

---

**5.** The enhancement for "more than minimal planning" under § 2F1.1 calls for only a two level enhancement of the offense level in most situations. However, "If the [resulting] offense level is less than ten, [the offense level is to be] increase[d] to level ten." Sentencing Guidelines, § 2F1.1(b)(3).

Witherspoon argues that, if the two-point enhancement under § 3C1.1 had been added first, the "more than minimal planning" enhancement would only have required two more points to reach the level of ten. However, the overall scheme of the Sentencing Guidelines requires the enhancement under § 2F1.1 to be applied *before* the two-point enhancement under § 3C1.1, *see* Sentencing Guidelines, § 1B1.1(b) & (c); thus we refuse to alter the trial judge's enhancement of her base offense level by four points to the level of ten, rather than the usual two points.

the event she claims motivated her actions, her pregnancy. Therefore, when Witherspoon obtained the first false identification card in September of 1988 on which she listed a false date of birth, a false phone number, a false address, and a false name, she could not have been motivated by threats made against her by her husband as a result of her pregnancy. Thus, Witherspoon's testimony in this respect is not credible. Furthermore, Witherspoon obtained her State-issued Identification Card after the First Wisconsin National Bank had earlier rejected her application to open an account, due to her lack of proper identification material.

Witherspoon obtained and used multiple forms of false identification.[6] Because of the forethought and planning required in obtaining false identification as early as September of 1988, the planning and effort required to obtain two false college identification cards, and the effort to obtain another type of false identification, a State-issued Identification Card, after a failed attempt at opening one bank account (First Wisconsin National Bank), we hold that the trial court's judgment was not clearly erroneous in enhancing Witherspoon's sentence by four points pursuant to § 2F1.1(b)(2)(A) of the Sentencing Guidelines.[7]

## B.

### Enhancement—Obstruction of Justice

■ Witherspoon claims that the district court erred in the enhancement of her base offense level by two more points (from 10 to 12) under the Sentencing Guidelines for obstruction of justice, pursuant to § 3C1.1 of the Sentencing Guidelines.[8] The basis for this enhancement was the false information which she provided to the pre-trial services officer in preparation for the initial setting of the bail bond. Her *modus operandi* of giving false information was consistent with the similar false information she gave the two banks in attempting to open checking accounts, except that the Social Security Number and birth date were different, having been randomly selected by Witherspoon.

The judge enhanced Witherspoon's sentence for obstruction of justice, finding that she "furnish[ed] material falsehoods to a probation officer in the course of a pre-sentence or other investigation for the court" pursuant to application note (1)(e) to § 3C1.1. This court has previously approved the enhancement of a sentence under § 3C1.1 based upon providing false information and/or materials to a probation officer in preparation for his report to the court. *Jordan*, 890 F.2d at 973. We recently upheld a § 3C1.1 enhancement based upon providing a false name to investigators and lying about a past record of arrests. *United States v. Gaddy*, 909 F.2d 196 (7th Cir.1990). The district court found that "it's clear that Ms. Witherspoon did provide false information to pre-trial services in connection with the bail." She provided the false name and withheld information regarding her prior conviction until it was

---

**6.** The only case we can find where possession and use of multiple items of false identification was utilized to enhance a sentence under a "more than minimal planning" provision of the Sentencing Guidelines is the California District Court case, *United States v. Ruelas–Armenta*, 684 F.Supp. 1048, 1052 (C.D.Cal.1988), where the court held that the possession combined with the use of multiple items of false identification by the defendant was sufficient to support the enhancement for more than minimal planning. The defendant in *Ruelas–Armenta* was charged with possessing the contents of a letter which had been stolen from the mail, in violation of 18 U.S.C. § 1708. The defendant stole checks from the mail and used false identification in order to cash the checks. Like Witherspoon, the defendant in *Ruelas–Armenta* used multiple forms of false identification as an inte-

gral part of his illegal scheme to promote a fictitious identity.

**7.** We also note that the pre-sentence report contained a reference to the fact that Witherspoon had previously been convicted of a crime also involving the use of false identification. Specifically, she had been arrested in December of 1985 and convicted of filing a fraudulent credit card application at a Chicago bank.

**8.** Section 3C1.1 provides:

"If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels."

challenged and brought to the attention of the court by the government.

■ Witherspoon claims that this upward enhancement punishes her twice for the offense for which she was convicted. Witherspoon was indicted for lying to personnel at First Interstate Bank in Milwaukee, while the two-point upward enhancement was made by the trial court because of her acts of deceiving a pre-trial services officer with false information. Although the conduct was similar in nature, they were two separate and distinct acts of providing false information. The application note to the Sentencing Guideline, approved by this court in *U.S. v. Jordan*, 890 F.2d at 973, specifically allows for enhancement when a defendant furnishes false information in the course of an "... investigation [by] the court." U.S.S.G. § 3C1.1 (n.(1)(c)). Witherspoon's action in providing false information to the pretrial services officer, who was conducting a bail investigation for the court, falls squarely within the application note. Therefore, we hold that the upward enhancement of her sentence was not clearly erroneous.[9]

## C.

### Denial of Reduction—Acceptance of Responsibility

■ In her final challenge to the trial court's enhancement of the sentence, Witherspoon claims that she should have been awarded a two point reduction in her offense level for "acceptance of responsibility," pursuant to § 3E1.1 of the Sentencing Guidelines. The trial court found that her "contended contrition and explanations do not wipe out the obstruction of justice conduct that's previously alluded to." Witherspoon continued to provide the same false information to the probation officer after her arrest that she had provided to the two

banks, and continued her use of the false identity in her appearance before the U.S. Magistrate, who relied upon the false information in setting her initial bond. She claims that her guilty plea and alleged expressions of sincere remorse entitle her to a 2–point sentence reduction for acceptance of responsibility, even in light of her actions of continually deceiving bank employees, the pre-trial services officer, and the U.S. Magistrate.

The application notes to § 3E1.1 in effect at the time of Witherspoon's sentencing precluded a reduction of sentence for acceptance of responsibility when that sentence had already been enhanced because of obstruction of justice under § 3C1.1, as in Witherspoon's case.[10] Application note 4 to § 3E1.1 provided:

"An adjustment under this section is not warranted where a defendant perjures himself, suborns perjury, or otherwise obstructs the trial or the administration of justice (*see* § 3C1.1), regardless of other factors."

The intent of this application note is clear. Prior to the amendment, the Sentencing Commission did not intend to allow a reduction under § 3E1.1 (acceptance of responsibility) when there had been an enhancement under § 3C1.1 (obstruction of justice). The two provisions were, according to the application note, mutually exclusive.

In her argument for the granting of a reduction, Witherspoon relies on the fact that she signed a plea agreement and pled guilty to the offense charged. Application note 3 to § 3E1.1 provides: "A guilty plea may provide some evidence of the defendant's acceptance of responsibility. However, it does not, by itself, entitle a defendant to a reduced sentence under this section." The only other evidence which she

---

**9.** Witherspoon also argues that providing her true name and identity to the pre-trial services officer would have been "tantamount to giving a full confession to the crime charged," and that she gave the false information as a result of her uncounseled decision to exercise her constitutional right against self-incrimination. However, at the time of her arrest she was advised that she had the right to remain silent. Silence, rather than deception, is the manner in which the Supreme Court has chosen to allow uncoun-

seled defendants to exercise their right against self-incrimination. *See Miranda v. State of Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966). Since she was fully aware of her right to remain silent, she waived that right when providing information to the pre-trial services officer.

**10.** This application note was amended effective November 1, 1989.

cites is a letter which she sent the court apologizing for her actions. We agree with the trial court that the evidence introduced in support of her claim that she accepted responsibility for her actions falls far short of meeting the necessary standard for a reduction based upon acceptance of responsibility. The application note in effect at the time of her sentencing also precluded this adjustment when the sentence was enhanced for obstruction of justice under § 3C1.1, as Witherspoon's had. Thus, we hold that the trial judge's refusal to apply a 2-point sentencing level reduction for acceptance of responsibility was not clearly erroneous.

Witherspoon also challenges her sentence arguing that the trial court should have granted a downward departure from the applicable guidelines, and further that the Sentencing Guidelines are unconstitutional because they violate her due process right to individualized sentencing. She urges this court to specifically overrule the holdings of two recent cases which are directly on point and contrary to her argument. *See United States v. Franz,* 886 F.2d 973 (7th Cir.1989) (holding that the court of appeals lacks jurisdiction to review a district court's refusal to depart from the Sentencing Guidelines); *United States v. Pinto,* 875 F.2d 143 (7th Cir.1989) (holding that the Sentencing Guidelines do not violate a defendant's due process right to an individualized sentence). We refuse.

### III.

### Conclusion

Antinuke Witherspoon fraudulently secured and then utilized multiple forms of false identification in attempting to open a checking account at the First Wisconsin National Bank in Milwaukee, Wisconsin, and then successfully opening a checking account at the First Interstate Bank of Wisconsin in Milwaukee with false credentials. She pled guilty to the charge of using a false Social Security Number in violation of 42 U.S.C. § 408(g)(2), and stipulated in her plea agreement that the base offense for her crime was 6 according to the United States Sentencing Commission Guidelines. In her plea agreement she also expressed her understanding that the court would be able to enhance her sentence according to the factors contained in the Sentencing Guidelines.

Witherspoon challenges the adjustments the trial court made to her sentence in increasing her offense level from 6 to 12. Witherspoon's calculated and programmed scheme of obtaining and using multiple forms of false identification under the same fictitious name, clearly demonstrates "more than minimal planning." Her providing of false information to the pre-trial services officer and the United States Magistrate at her bond hearing, clearly established that Witherspoon obstructed the administration of justice. Witherspoon argues that her plea of guilty entitles her to support for a reduction of her offense level for acceptance of responsibility, in spite of the fact that the applicable Sentencing Guidelines preclude such a reduction when the sentence has been enhanced for obstruction of justice. We disagree with Witherspoon, because the mere entering of a guilty plea is insufficient to warrant a reduction in sentence. The trial court's action in enhancing Witherspoon's sentence and refusing to make a downward adjustment was not erroneous.

Affirmed.