**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard G. HADDON,
Defendant–Appellant.**

**Nos. 89–3671 & 89–3723.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 7, 1990.

Decided March 8, 1991.

L. Lee Smith, Darilynn J. Knauss, Asst. U.S. Attys., Office of the U.S. Atty., Peoria, Ill., for plaintiff-appellee.

G. Trent Marquis, Klockau, Mcarthy, Ellison & Marquis, Rock Island, Ill., for defendant-appellant.

Before CUMMINGS and COFFEY, Circuit Judges, and GORDON, Senior District Judge.[1]

1. Honorable Myron L. Gordon, Senior District Judge of the Eastern District of Wisconsin, is sitting by designation.

MYRON L. GORDON, Senior District Judge.

Richard Haddon, formerly a civilian employee of the United States Army appeals following a jury trial that ended in his conviction on one count of making a false claim to the Army, under 18 U.S.C. § 287, and two counts of making a false statement to government officials, each under 18 U.S.C. § 1001. We affirm.

## I.

In May 1986, Mr. Haddon was transferred from the Rock Island (Illinois) Arsenal to Fort Riley, Kansas. To effectuate this transfer, the Army permitted Mr. Haddon an advance of the expenses it expected he would incur during the transfer of his household. It was Mr. Haddon who provided the information upon which the Army's expectation was based. Mr. Haddon informed the Army that he would be joined in the move by his wife and seven children. The Army advanced Mr. Haddon $9,043 in reliance upon that information. One week later, based upon Mr. Haddon's representation that he had under-estimated the weight of his household goods, the Army adjusted the total advance to $11,092. Several weeks later, again based upon Mr. Haddon's representation that he and his family would be spending an additional thirty days in temporary lodging, the Army advanced him another $5,102.

In early 1987, the Army had not yet received any travel or moving expense vouchers from Mr. Haddon. Its accountants contacted Mr. Haddon, who reported that he had lost his receipts and that his mover had moved to Alaska. He reported that the motel in which he and his family had temporarily lodged had burned, along with its records. The accountants permitted Mr. Haddon to submit a statement of expenses where vouchers were unavailable. In response, Mr. Haddon ultimately submitted vouchers for his travel and moving expenses as well as two handwritten statements. [Government Exhibit Nos. 3, 4 (exhibits hereafter referred to as "GX ____")] In 1988, Mr. Haddon submitted two estimates of his moving costs placing his total

actual expenses nearer $3,000 than the total advanced expenses—a figure over $15,-000. [GXs 16, 17] Moreover, the Army accountants became suspicious when they found that Mr. Haddon had claimed daily meal costs for his nine member household of approximately $100–150, yet daily lodging costs of but $26.60. This suspicion triggered their closer scrutiny of the relationship between Mr. Haddon's actual moving and travel expenses and his sizable advance. Unable to resolve their concerns, they contacted the Federal Bureau of Investigation (FBI). On April 22, 1988, two FBI agents conducted an interview of Mr. Haddon, who appeared voluntarily and without counsel.

During the interview, Mr. Haddon initially clung to his original story that his family had joined him in the move. By the time the interview was completed, the FBI agents had secured a signed confession by Mr. Haddon stating that his family had not moved with him to Fort Riley and that he had instead used the money to bribe officials of the government of the Philippines to allow his children to emigrate to this country. [GX 19 (a copy of which is appended hereto)]. Armed with Mr. Haddon's confession, the government ultimately charged Mr. Haddon in a four-count criminal indictment.

Count One charged that on March 11, 1988, Mr. Haddon presented a false claim to the Army in which he sought remuneration for expenses incurred by himself, his wife, and his children during the relocation to Fort Riley. That claim was false, the government charged, because Mr. Haddon knew that he had not relocated his wife and children. Count Two charged that on March 11, 1988, Mr. Haddon concealed the fact that his wife and children had not relocated with him to Fort Riley by falsely representing to the Army that he had moved his household goods. That claim was knowingly false, the government charged, because Mr. Haddon knew he had not moved his family or his household goods. Count Three charged that on May 7, 1986, Mr. Haddon falsely stated to the Army that all of his seven children would

be moving with him to Fort Riley. The government charged that Mr. Haddon then knew that his children would not be relocating with him. Count Four charged that on September 12, 1986, Mr. Haddon falsely stated to the Army that his wife and seven children had moved from Davenport, Iowa, to Fort Riley. The government charged that Mr. Haddon then knew that they had not moved with him. Count One was brought under 18 U.S.C. § 287; the remaining counts were brought under 18 U.S.C. § 1001.

At trial, the government endeavored to prove the substance of the indictment—that Mr. Haddon had, indeed, made a series of false claims and representations to the Army. Mr. Haddon defended these charges by asserting that the concededly false information on his vouchers had been placed there contrary to his instructions—by Army accountants—and was, in any event, simply an estimate of his expenses. Mr. Haddon further testified that he was under the influence of prescription drugs at the time he submitted the vouchers.

After a two-day trial, the jury found Mr. Haddon guilty as charged in Counts One, Two, and Four, and not guilty of having falsely stated that his family would move to Fort Riley with him, the offense charged in Count Three. The district court sentenced him under the Sentencing Guidelines, and this appeal followed.

## II.

### A.

Mr. Haddon challenges the voluntariness, hence the admissibility, of a written statement he provided to two investigating FBI agents, Anne Lorraine McNair and Mark Lewis, when he visited with them at their office and at their invitation. There is no question that Mr. Haddon was neither in custody nor under arrest when he was interviewed by the agents.

The interview culminated in an inculpatory written statement signed by Mr. Haddon. [GX 19]. Mr. Haddon did little of the actual "writing" of his written statement; it was done almost exclusively by Agent McNair—presumably in Mr. Haddon's words. Mr. Haddon later challenged the admissibility of the statement into evidence, claiming that he was under the influence of prescription drugs during the meeting. Further, Mr. Haddon claimed that his request for counsel was not honored—indeed, that it was met with a hostile and threatening response.

The district court conducted a suppression hearing and concluded that the statement was voluntarily made and admissible as evidence of Mr. Haddon's guilt. Underlying the district court's determination was the finding that Mr. Haddon's version of the events surrounding his "confession" did not have the same "ring of truth" to it as the version proffered jointly by Agents McNair and Lewis.

We accept the factual determinations made by the trial court when ruling on a motion to suppress unless they are clearly erroneous. *United States v. Oglesby*, 764 F.2d 1273, 1278 (7th Cir.1985); *United States v. Ganter*, 436 F.2d 364, 368 (7th Cir.1970); *see also United States v. Fazio*, 914 F.2d 950, 955 & n. 5 (7th Cir.1990); *United States v. Rodgers*, 755 F.2d 533, 546 (7th Cir.1985) (clearly erroneous standard governs determination of voluntariness of confession). This standard is particularly deferential to the credibility determinations of the district judge who has conducted a suppression hearing wherein the conflicting testimony of witnesses was observed and afterward resolved. *Rodgers*, 755 F.2d at 546. That was the case here.

A confession will be adjudged "voluntary" if the government demonstrates that under the totality of the circumstances and by a preponderance of the evidence that it was not secured through psychological or physical intimidation but rather was the "product of a rational intellect and free will." *United States v. Holleman*, 575 F.2d 139, 142 (7th Cir.1978); *United States v. Madison*, 689 F.2d 1300 (7th Cir.1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983). The "test for a voluntary confession is 'whether the defendant's will was overborne at the

time he confessed.'" *United States v. Hocking*, 860 F.2d 769, 774 (7th Cir.1988) (*quoting Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 (1963)). Accordingly, coercive police activity is a "necessary predicate" to a determination that a confession was not voluntarily made. *Fazio*, 914 F.2d at 955 (quotation omitted) (*citing Colorado v. Connelly*, 479 U.S. 157, 166, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986)). Moreover, while a confession secured from a defendant during custodial interrogation is attended with a presumption of coercion, there is no such presumption attendant to a confession secured during non-custodial interrogation. *Fazio*, 914 F.2d at 956; *Hocking*, 860 F.2d at 774.

"The issue of coercion is determined from the perspective of a reasonable person in the position of the suspect." *Fazio*, 914 F.2d at 955 (*citing Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984)). *See also United States v. Shelby*, 573 F.2d 971, 975 (7th Cir.) (non-custodial confession voluntary and hence admissible where the defendant, although a "little frightened" and perhaps feeling "in his own mind some coercion," was not the subject of misconduct by the investigating FBI agents), *cert. denied*, 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed.2d 139 (1978); *United States v. Hawkins*, 823 F.2d 1020, 1023 (7th Cir.1987).

■ Examining the totality of the circumstances, we have no occasion to upset the district court's finding that Mr. Haddon's will was not overborne. Although Mr. Haddon may have felt some coercion in his own mind, it is not at all apparent that a reasonable person in Mr. Haddon's position would have felt coerced. Nor would Mr. Haddon's claim that he was under the influence of the prescription drugs, without more, render his confession involuntarily made. It is a balancing test that must be employed: when the interrogating officers reasonably should have known that a suspect is under the influence of drugs or alcohol, a lesser quantum of coercion may be sufficient to call into question the voluntariness of the confession. *Cf. Colorado v. Connelly*, 479 U.S. 157, 164–65, 107 S.Ct.

515, 520–21, 93 L.Ed.2d 473 (1986) (mental condition of the suspect is not dispositive of the issue of voluntariness apart from improper police coercion). In Mr. Haddon's case, the balance tipped in favor of a finding of voluntariness.

■ The only evidence that the defendant was under the influence of prescription medication, hence in a diminished mental condition, came from his own (self-serving) testimony. Agents Lewis and McNair both testified that the defendant was, at times during the interview, nervous, but neither observed that the defendant manifested any indicia of an intoxicated state. The most substantial evidence of improper coercion was also the testimony of the defendant himself, who stated that he had been told by the agents that if he would not cooperate with them they would seek an indictment with the evidence they had already collected. These strong words—stating an acceptable contingency (perhaps even a fair warning)—do not, without more, suggest improper coercion.

This court has cautioned that a "noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where 'the behavior of ... law enforcement officials was such as to overbear [the suspect's] will to resist and bring about confessions not freely self-determined.'" *Hocking*, 860 F.2d at 774 (*quoting Beckwith v. United States*, 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1976)) (*quoting in turn Rogers v. Richmond*, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961)). However, our independent examination of the record satisfies us that the district court's factual and credibility determinations are not clearly erroneous—they leave us with no firm or definite conviction that a mistake has been made. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). In agreement, as we are, with the district court's factual determinations, we are unable to upset its legal conclusion on the ultimate issue: that under the totality of the circumstances Mr.

Haddon's confession was voluntary and properly admitted into evidence.

### B.

■ Mr. Haddon also complains that a statement by the prosecutor in her closing rebuttal argument constituted a reversible error. The challenged statement occurred during the following colloquy:

> Ms. KNAUSS [the prosecutor]: May it please the Court, counsel, ladies and gentlemen of the jury: counsel just indicated at the beginning of his closing argument that this is your last opportunity. That is true, but you are the last opportunity not just for this defendant but for all citizens. Without the justice system it would be a lawless society, and that is what we seek to avoid. We choose juries to decide. We don't want people taking the law into their own hands.
>
> ... May [Many?] travelers go in and outside of the Rock Island Arsenal day in and day out but do not do what Mr. Haddon did. We are not here because Mr. Haddon was transferred from Rock Island to Ft. Riley. *We are here because Mr. Haddon chose to break the law.*
>
> Mr. MARQUIS [defense counsel]: I'm going to object to that characterization[;] we are here because he is charged with breaking the law.
>
> THE COURT: This is final argument. I will overrule the objection.

Transcript of Jury Trial, at 386 (emphasis added).

Notwithstanding the district court's ruling to the contrary, we are of the opinion that the defense counsel's characterization of why the jury was summoned to hear the case was more accurate than the prosecutor's. The objection was proper.

The Supreme Court long ago described the high standard of conduct to which prosecutors affiliated with the Office of the United States Attorney are held:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); *United States v. Meeker*, 558 F.2d 387, 390 (7th Cir.1977) (conviction reversed and new trial granted where the prosecutor persisted in questioning the witnesses on "facts" beyond the record).

Mr. Haddon suggests that the federal prosecutor's conduct in this case fell below the standard enunciated in *Berger*. Specifically, he contends that the prosecutor's statement highlighted above was improper as manifesting her personal belief in his guilt; he claims that it was *reversible* error for the district court to overrule his objection. Every one of the federal circuit courts of appeals is in agreement with the proposition that prosecutorial statements constituting a representation of a personal belief as to the defendant's guilt are improper. *United States v. Caldwell*, 543 F.2d 1333 (D.C.Cir.1975), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *United States v. Cain*, 544 F.2d 1113 (1st Cir.1976); *United States v. Clark*, 613 F.2d 391 (2d Cir.1979), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980); *United States v. DiLoreto*, 888 F.2d 996 (3d Cir.1989); *United States v. Harrison*, 716 F.2d 1050 (4th Cir. 1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984); *United States v. Siegel*, 587 F.2d 721 (5th Cir.1979); *United States v. Bess*, 593 F.2d 749 (6th Cir. 1979); *United States v. Creamer*, 555 F.2d 612 (7th Cir.), *cert. denied*, 434 U.S. 833, 98 S.Ct. 118, 54 L.Ed.2d 93 (1977); *United States v. Singer*, 660 F.2d 1295 (8th Cir.

1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982); *United States v. McKoy,* 771 F.2d 1207 (9th Cir.1985); *United States v. Hooks,* 780 F.2d 1526 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986); *United States v. Eley,* 723 F.2d 1522 (11th Cir. 1984).

The prosecutor's statement is more fairly characterized as mildly intemperate than as one manifesting her personal belief in Mr. Haddon's guilt. Nevertheless, the statement was improper—one we urge federal prosecutors to refrain from making in the future. Our assessment of the effect of this improper statement in the prosecutor's closing argument will be made "in the context of the entire trial." *United States v. Baskes,* 687 F.2d 165, 170 (7th Cir.1981) (per curiam); *United States v. Falk,* 605 F.2d 1005 (7th Cir.1979), *cert. denied,* 445 U.S. 903, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980). However, in this court, "we do not reverse convictions to punish prosecutors;" reversal is unwarranted unless both "the seriousness of prosecutorial misconduct and the weakness of evidence causes us to question a trial's fairness." *United States v. Pirovolos,* 844 F.2d 415, 427 (7th Cir. 1988).

Only in a close case is it that "egregious prosecutorial misconduct might require us to overturn the trial judge's finding that it had not prejudiced the jury's consideration of the case." *United States v. Mazzone,* 782 F.2d 757, 764 (7th Cir.1986), *cert. denied,* 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 84 (1986). The district court obviously did not regard the prosecutor's statement as prejudicial; based on *our* review of the evidence, we agree. We state with confidence that this cannot be called a "close case." Upon our examination of the entire trial record created in this case, we find it "almost inconceivable that if the prosecutor had refrained from making the remarks that [she] did, the [defendant] would have been acquitted." *Mazzone,* 782 F.2d at 764; *Pirovolos,* 844 F.2d at 427. Accordingly, we conclude that there was no reversible error.

C.

■ Mr. Haddon also points to a statement by the court during voir dire that there was "one chance in a hundred" that deliberations would last more than a day as reversible error. The complained-of portion of the voir dire examination went as follows:

THE COURT: ... Any of you have any problem with the length of the trial, as I described it; that is, today [Monday] through Wednesday?

JUROR NO. 21: I've got something going on Thursday that I would have to be at.

THE COURT: You've got something going Thursday you said?

JUROR NO. 21: Yes.

THE COURT: I have reason to think this trial would not go into Thursday. I believe the jury would get this case on Wednesday.

The only thing that would cause it to go into Thursday is if deliberations on it went on Thursday. I have no way of knowing that. It is not likely that it will. I'm not saying that it couldn't happen.

With that explanation, where does that leave you?

JUROR NO. 21: Well, that is something that I have to be at.

THE COURT: *Well, I don't think there is one chance in a hundred that these deliberations are going to take that long.*

But let me see counsel for a minute. (Discussion among Court and Counsel out of the hearing of the reporter.)

THE COURT: I'm going to excuse you. Thank you very much.

Transcript of Voir Dire Examination, at 3–5 (emphasis added).

Mr. Haddon's defense counsel did not object to the court's remark at the time. On this appeal, however, we are told that the remark constituted an improper instruction to the jury that had the virtual effect of directing a verdict of guilty. In making this argument, Mr. Haddon concedes that the weight of the evidence of his guilt was great—it is for that very reason,

he claims, that the court's remark worked a prejudicial effect. It is asserted that this remark gave the jurors the impression that the court believed Mr. Haddon to be guilty as charged. When a remark by the trial court is challenged in this manner on an appeal, we assess the prejudicial effect of the court's statement in the context of the entire trial record. *United States v. Cent-racchio,* 774 F.2d 856 (7th Cir.1985). However, we remain mindful that

> [c]ommunications between judge and jury must be handled with particular care, and statements suggesting that the jury reach a *quick* verdict at the expense of a *thoughtful* verdict are to be deplored.

*United States v. Peskin,* 527 F.2d 71, 85 (7th Cir.1975) (emphasis added), *cert. denied,* 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976); *United States v. Fry,* 304 F.2d 296 (7th Cir.1962).

We have examined the entire record in considering this contention of the defendant and find no reversible error. Our review of the entirety of the record demonstrates that the district court's complained-of remark is most accurately characterized as a legitimate, if somewhat improvident, attempt by the district court to exercise its discretionary authority to complete one particularly difficult task in the management of a trial—jury selection. The failure of counsel to object to the court's remark, aside from its effect as waiver, is impressive evidence that an interpretation of the remark as manifesting the court's prejudgment of the defendant's guilt would be "a strained rather than a natural interpretation." *Cf. Peskin,* 527 F.2d at 85.

Moreover, at the close of the trial, in its final charge to the jury, the court cautioned the jury as follows:

> Neither by these instructions nor by any ruling *or remark which I have made* do I mean to indicate any opinion as to the facts or as to what your verdict should be. You are the sole and exclusive judges of the facts.

Transcript of Jury Trial, at 393 (emphasis added).

We believe that this "stock" curative instruction would have ameliorated any ill effects of the earlier-made remark. We decline to accept the defendant's suggestion that the curative instruction was ineffective. We cannot fairly characterize the remark challenged on this appeal as a pronouncement of guilt by the trial court that in any way had the effect of depriving the defendant of a fair trial.

### D.

Ultimately, the defendant urges that the cumulative effect of these and other errors was to deprive him of a fair trial. We only recently commented that

> [A]ll too often, as we are seeing in this case, the defense counsel takes a buckshot approach, hoping a pellet will strike. But as the Supreme Court has "repeatedly stated, 'the Constitution entitles a criminal defendant to a fair trial, not a perfect one.' "

*United States v. Zambrana,* 841 F.2d 1320, 1347 (7th Cir.1988) (*quoting Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986)), (*quoting in turn Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)); *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). Thus, while we have some misgivings about the "buckshot" approach, we nevertheless acknowledge that there is some authority in this circuit for the proposition that the cumulative effect of trial errors may be to deprive a criminal defendant of the constitutional right to a fair trial. *See, e.g., United States v. Standard Oil Co.,* 316 F.2d 884, 896 (7th Cir.1963) (new trial granted); *United States v. DeGeratto,* 876 F.2d 576 (7th Cir.1989) (new trial granted because of an "accumulation of unfairness and [prosecutorial] overreaching" during the original trial).

We find no "image of unfairness" to be presented by the record in this case. *Cf. Knapp v. United States,* 311 F.2d 71, 74 (5th Cir.1962). This record "fairly shrieks" the guilt of the defendant, and we cannot conceive how any of the asserted errors, either individually or cumulatively, "could

have possibly influenced this jury to reach an improper verdict." *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). Our review of the entire record satisfies us that the defendant received "the fair trial to which he is entitled under the Constitution." *Zambrana,* 841 F.2d at 1347.

### III.

█ The defendant contends that the evidence was insufficient to support a jury verdict of conviction under 18 U.S.C. § 287 (Count One), a prohibition against intentionally presenting a false, fictitious or fraudulent claim to an agency of the United States, and 18 U.S.C. § 1001 (Counts Two and Four), a generalized prohibition against intentionally making false or misleading statements to government employees.

The standard of review for an appeal of this type was set forth in *United States v. Hogan,* 886 F.2d 1497, 1502 (7th Cir.1989):

In assessing a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution and draw all reasonable inferences in its favor. *United States v. Douglas,* 874 F.2d 1145, 1151 (7th Cir. 1989) [, *cert. denied sub nom., Pruitt v. United States,* — U.S. —, 110 S. Ct. 126, 107 L.Ed.2d 87 (1989) ]. "If *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," we must affirm. *Jackson v. Virginia,* 443 U.S. 307, 329 [99 S.Ct. 2781, 2794, 61 L.Ed.2d 560] (1979) (emphasis in the original); *see also United States v. Floyd,* 882 F.2d 235, 239 (7th Cir.1989). Because [the defendant] received a jury trial, we must on review defer to reasonable inferences drawn by the jury and the weight it gave to the evidence. *United States v. Draiman,* 784 F.2d 248, 251 (7th Cir.1986).

*See also United States v. Buggs,* 904 F.2d 1070, 1074 (7th Cir.1990); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Fozo,* 904 F.2d 1166, 1169 (7th Cir.1990) (evidence

and inferences therefrom taken in light most favorable to the government).

"A verdict will withstand a sufficiency of the evidence challenge unless there is no evidence from which the jury could find guilt beyond a reasonable doubt." *United States v. Caudill,* 915 F.2d 294, 296–97 (7th Cir.1990); *United States v. Beverly,* 913 F.2d 337, 360 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991); *see also United States v. Isaacs,* 493 F.2d 1124, 1146 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 3184, 41 L.Ed.2d 1146 (1974). "Our task is not to retry this case from the record." *United States v. Holleman,* 575 F.2d 139, 145 (7th Cir.1978).

On Count One, an alleged violation of 18 U.S.C. § 287, the judge instructed the jury that the government was required to prove the following four elements:

First, that the defendant made or presented a claim upon the United States or the department or agency of the United States.

Second, that the claim was false, fictitious or fraudulent.

And third, that the defendant knew the claim was false, fictitious or fraudulent.

And fourth, that the defendant submitted the claim with intent to defraud.

Transcript of Jury Trial, at 399.

On Count Two, one of the § 1001 counts, charging the defendant with having concealed a material fact, the judge instructed the jury that the government was obligated to prove the following:

First, the defendant concealed or covered up a fact by a trick, scheme or device.

Second, the defendant did so knowingly and willfully.

And, third, the fact related to a matter within the jurisdiction of a federal department or agency.

Transcript of Jury Trial, at 399–400.

On the remaining two counts, also brought under 18 U.S.C. § 1001, charging Mr. Haddon with having made a false or fictitious representation, the judge instructed the jury that the government was obli-

gated to prove the following to sustain a verdict of guilty on each:

> First, the defendant made a false, fictitious or fraudulent statement or representation.

> Second, the statement or representation was made knowingly and willfully.

> And, third, the statement or representation was made in a manner within the jurisdiction of the department or agency of the United States.

Transcript of Jury Trial, at 400.

We find each of these instructions to have accurately presented the jury with the fundamental questions bearing upon the defendant's guilt or innocence of the charged offenses. We also find the evidence supported the jury's determination that the government had proved Mr. Haddon's guilt on those counts beyond a reasonable doubt.

The only element contained in these instructions (and it is an element common to each of them) to which the defendant has even a *colorable* claim that the evidence was insufficient to prove is the knowledge element. We have no doubt that the facts adduced at trial created a jury question on that issue. That is, it certainly cannot be maintained that there was *no* evidence of Mr. Haddon's culpable mental state in the record. Indeed, there was ample evidence of the "knowing" character of his conduct. We are fully satisfied that Mr. Haddon's assertion that he did not *know* he was submitting each of the various false claims and statements charged was simply rejected by the trier of fact.

Viewed in the light most favorable to the government, Mr. Haddon's initial submission to the Army of claims for expenses incurred by him and his family (aggravated thereafter by his failure timely to respond to requests for substantiation of his claims) culminating in his false statements in an attempt to conceal and perpetuate the initial fraud were *knowing* violations of law. His shifting excuses suggest an active mind at work: the requisite intent to defraud was present. *Cf. United States v. Mann*, 108 F.2d 354, 358 (7th Cir.1939) ("Here, the jury rejected defendant's pro-

fessions of innocence in the face of stubborn facts plainly pointing to his guilt."). Our review of the record and exhibits, including the representations contained in the written statement Mr. Haddon voluntarily made to the investigating FBI agents [GX 19], constrain us to reject Mr. Haddon's contention that the evidence proffered at trial was insufficient to support a verdict of guilty, *see United States v. Lake*, 910 F.2d 414, 418 (7th Cir.1990).

## IV.

█ Finally, the defendant urges that the district court erred in its determination of the base offense level under the sentencing guidelines. Under the guidelines, appeals are not of right, *see, e.g., United States v. Franz*, 886 F.2d 973 (7th Cir. 1989), so what the defendant must mean is that he appeals the imposition of a sentence resulting from "an incorrect application of the sentencing guidelines." *See* 18 U.S.C. § 3742(a)(2). Sentencing Guideline § 2F1.1, applicable to crimes of fraud and deceit such as this, directs the sentencing court to use the amount of the "loss" (not necessarily the amount of the fraud) in computing the base offense level. A "loss" of $10,001–20,000 adds three levels; a loss of $5,001–$10,000 adds two levels.

An application note to § 2F1.1 specifically contemplates the sort of quibble Mr. Haddon raises on this appeal:

> The amount of the loss need not be precise. The court is not expected to identify each victim and the loss he suffered to arrive at an exact figure. *The court need only make a reasonable estimate of the range of loss, given the available information....* The offender's gross gain from committing the fraud is an alternative estimate that ordinarily will understate the loss.

Sentencing Guideline § 2F1.1, Application Note 8 (emphasis added).

Another of the application notes to § 2F1.1 states that "if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the

actual loss." Sentencing Guideline § 2F1.1, Application Note 7; *United States v. Johnson*, 908 F.2d 396, 398 (8th Cir.1990) ("focus for sentencing purposes" placed on the amount of possible loss that the defendant attempted to inflict on secured creditors).

The district court's determination of the amount of loss (or its "reasonable estimate" thereof) was a finding of fact—a finding we may reverse only if it is clearly erroneous. 18 U.S.C. § 3742(e); *United States v. Smith*, 897 F.2d 909, 911 (7th Cir.1990); *see also United States v. Ojo*, 916 F.2d 388, 391 (7th Cir.1990) (appellate court reviews a district court's factual findings in determining an appropriate criminal sentence for "clear error"). "A finding of fact is clearly erroneous only if, after reviewing all the evidence, the appellate court is left 'with the definite and firm conviction that a mistake has been committed.'" *United States v. Brown*, 900 F.2d 1098, 1100 (7th Cir.1990) (*quoting Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

For the purposes of determining the sentence to be imposed under the guidelines, the trial court had an "obligation to employ fair procedures to determine the accuracy of information used in sentencing." *Franz*, 886 F.2d at 980 (*citing United States v. Agyemang*, 876 F.2d 1264 (7th Cir.1989)). We find that the court properly discharged its obligation under § 2F1.1 of the Sentencing Guidelines by reducing the available information to a "reasonable estimate" of the loss. The court conducted a sentencing hearing, at which it invited the government and the defendant to "hammer out" the correct amount of loss. At that hearing, the defendant had the opportunity—in our view, the obligation—to offer to the court an alternative method of calculating the loss. During the hearing, the court made a factual finding that a reasonable estimate of the amount of the loss was $10,780.35, based upon information provided by the government. Our review of the record discloses that during the sentencing hearing Mr. Haddon's defense counsel manifested an apparent agreement with that figure. *See* Transcript of Sentencing Hearing, at 9–12.

Mr. Haddon now urges, in a manner the government has called "unilluminating" (we are inclined to agree), that the total fraud was $9,635.38. To the extent that Mr. Haddon disagreed with the district court's estimate of the loss, he was obligated to "fight it out" at the hearing; Mr. Haddon may not now proffer new facts in an effort to prove that the district court was wrong; the defendant was obligated to present his argument, fully supported by "available information," to the district court—there and then to have the relative merits of his contentions considered. Mr. Haddon was obligated to submit to the district court in a *coherent* manner his calculation of the loss. Because Mr. Haddon failed to do so before the district court, our review consists only of an examination of the appropriate portions of the record, at Mr. Haddon's request, for "clear error."

Even now, Mr. Haddon has failed to substantiate his claim of error in the district court's calculation of the total amount of loss he worked upon the Army. He does not give us any way to agree with his figures. Conversely, the government's evidence supports the finding of the district judge, irrespective of the great weight that we accord that finding. *Smith*, 897 F.2d at 911; *United States v. White*, 888 F.2d 490, 495 (7th Cir.1989). Under the guidelines and applications notes thereto, the district court was obliged to make a "reasonable estimate" of the loss based upon the "available information." That is precisely what was done. We are satisfied that the district court "correctly applied the guidelines to findings of fact that do not leave us with the definite and firm conviction that a mistake has been committed." *Ojo*, 916 F.2d 388, 391 (7th Cir.1990) (*quoting United States v. Jordan*, 890 F.2d 968, 972 (7th Cir.1989)). The determination that the amount of the loss was $10,780.35 is not clearly erroneous; based upon that figure, the determination to the offense level under the guidelines was correct.

## V.

In summary, our review of the record satisfies us that the defendant received "the fair trial to which he is entitled under the Constitution," *United States v. Zambrana*, 841 F.2d 1320, 1347 (7th Cir.1988), and a fair sentence in conformity with the Sentencing Guidelines as well. We emphasize that it is a *fair* trial to which the defendant was entitled, and not a *perfect* one. *United States v. Pirovolos*, 844 F.2d 415, 427 (7th Cir.1988); *Bruton v. United States*, 391 U.S. 123, 125, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968). Accordingly, we find no merit in any other contentions that Mr. Haddon has raised on this appeal. The judgment of conviction and corresponding imposition of sentence by the district court is

AFFIRMED.

## APPENDIX

GOVERNMENT
EXHIBIT
19
88-40016 08/29/89

Rock Island, Ill
4/22/88

I Richard Haddon, 1020 Warren Street, Davenport, Iowa, being Duly Sworn, furnish the following sworn statement to Special Agent N. Lorraine McNair and Special Agent Mark B. Lewis who have identified themselves as FBI Agents. No threats, promises, or Duress was used to get me to make this statement. I have been advised that it may be used in a court of law.

On or about April 1, 1988, I submitted a travel voucher to the finance office at the Rock Island Arsenal. This voucher was to settle my claim for permanent change of station from Rock Island to Fort Riley, Kansas, I had previously requested an advance of funds for the travel to my new duty station, temporary quarters and moving and storage of household goods. On May 27, 1986 I received a advance for $11,692.00, subsequently I requested an additional 30 days temporary quarters, and on September 26, 1987 I received $4,500.00.

These advances were for myself, my wife and 7 children, at the time of these advances 3 of my childrens were still in the Philippines.

I traveled alone to my new duty station arriving August 25, 1986. I stayed at the Harvest Inn, Junction City, Kansas I rented a room by the week for $85.00 plus tax. I stayed there for approximately 2 months.

Page 1 of 2

I did not move my household goods nor my family.

I used the money ~~received~~ I received as a advance to bribe philippine officials to get my children out of the philippines so they could join us in the United States.

I was being asked by my superiors to liquadate my advance. Because I had already spend all the money and could not do so I was desperate. I was given a ultimatum to submit a voucher to liquadate a advance or finance would began deducting the money from my payroll check.

I submitted a voucher showing that I moved with my family and household goods; and indicating that I was in temporary quarters with my family for 2 months. This was not true, but I was desperate. I could not afford to have the advance deducted from my check. I realize now that this was a dumb thing to do. because now the future of my family is on the line and I have nearly ruined my career also in trying to estrudged a few dollars.

I have read the above statement consisting of 2 Pages and it is true and correct to my best knowledge. I have intialed each Page and all corrections. I am willing to Testify to this statement in a court of law RH

Witness: Mrs B ____ SA FBI RI. IL. 4/22/88        22 APR 88
N. Loraine Medci SA FBI RI. IL 4/22/88   Richael S. Hadlow

Page 2 of 2