UNITED STATES of America, Appellee,

v.

Gil NARVAEZ and Viki Crump–Smith, Appellants.

Nos. 92–2104, 92–2134.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1993.

Decided June 9, 1993.

Michael B. Quigley (argued), Chicago, IL, for appellant Narvaez.

Judith A. Scully (argued), Chicago, IL, (Standish E. Willis, on the brief), for appellant Crump–Smith.

Eddie A. Stephens, Asst. U.S. Atty. (argued), Chicago, IL (Fred Foreman, U.S. Atty.), for appellee U.S.

Before CUDAHY and MANION, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

TIMBERS, Senior Circuit Judge.

Appellants Gil Narvaez and Viki Crump–Smith appeal from judgments entered on pleas of guilty in the Northern District of Illinois, James H. Alesia, *District Judge*, convicting them of participating in a scheme by which ticket agents stole money from fares paid to the Chicago Transit Authority (CTA). Narvaez appeals from his sentence imposed under the sentencing guidelines, claiming that the court erred in calculating his sentence based on the entire amount stolen, since he was not part of the entire conspiracy. Crump–Smith contends that she should not have been subject to an order for restitution since the court used unreliable calculations in determining the amount of the loss to the CTA attributable to her, and the court abused its discretion in imposing an order of restitution. For the reasons that follow, we affirm both convictions.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

This case involves an alleged conspiracy involving the CTA and its employees. The conspiracy, which took place from March 1988 through June 1991, involved a scheme by which ticket agents employed by the CTA would pay off the person in charge of work assignments so that they could be assigned to work at the busiest locations. The ticket agents, who collected the transit fares and recorded the amounts collected and the types of fares, would submit false fare reports to the CTA in which they would misrepresent the amounts collected and keep the unreported fares. The instant appeal arises from the consolidation of the cases against two appellants who are employees charged in the indictment. Others also were involved, but are not parties to this appeal.

* The Honorable William H. Timbers, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

The conspiracy count, count one, charged both Narvaez and Crump–Smith with: conspiracy to steal, embezzle, obtain by fraud, and otherwise, without authority, convert property and money having a value of more than $5,000, which was under the control of the CTA, in violation of 18 U.S.C. § 666 (1988 & Supp.1990); corruptly soliciting and demanding monies for the benefit of an agent of the CTA who corruptly accepted the monies from the ticket agents so that the CTA agent would be influenced and rewarded in connection with collecting of passenger fares, in violation of 18 U.S.C. § 666; and concealing or covering up material facts within the jurisdiction of the United States Urban Mass Transportation Administration, in violation of 18 U.S.C. § 1001 (1988 & Supp.1990). Counts three and four charged Crump–Smith (but not Narvaez) with knowingly and willfully making false, fictitious, and fraudulent statements and representations and with knowingly filing a false document as an "Agent's Report" in which she represented that the figures in the report about the amount of monies collected were true. The other counts did not involve appellants on this appeal. Both appellants entered into plea agreements. Narvaez pleaded guilty to the conspiracy count, the only count with which he was charged. Crump–Smith pleaded guilty only to count four.

Narvaez was employed by the CTA as a part-time ticket agent. He collected cash fares from passengers and was supposed to register the fares according to the type (i.e. cash, transfers, monthly passes). Narvaez admitted that he kept a portion of the cash receipts and falsely registered the number of fares he received. He submitted false summary reports regarding the amounts of cash he received from March 1989 until June 1990. He claims that in the spring of 1990 he started paying money to Morey Szczecin, who assigned the ticket agents their hours, so that Narvaez could get preferential hours. The amount Narvaez himself stole has been estimated at $9,000. He asserts that, although he knew that other defendants also were pocketing fares, and has admitted dis-

cussing the pay off of Szczecin with another defendant and even meeting Szczecin with another defendant to discuss how much money each was stealing, he did not know that the thefts were part of a common scheme. Narvaez was sentenced to twelve months imprisonment, to be followed by supervised release for three years. Also, he was ordered to pay $9,000 in restitution.

Narvaez appeals from his sentence, asserting that the court erred in including the amount others stole in increasing the base offense level of his sentence under the guidelines. Although he admits that he knew others were involved in similar schemes, he claims that each operated independently of the others.

Crump–Smith also was a ticket agent for the CTA. In her plea agreement, she pleaded guilty only to count four which charged her with submitting a false agent report on May 2, 1990 and having stolen $120 from the CTA on that day. She did not plead guilty to the conspiracy count. In her plea agreement, she admitted that she frequently stole $100 from CTA fares, but sometimes stole more or less. The exact total amount she stole from the CTA is unknown. The court estimated that the amount was about $25,000. She was sentenced to six months imprisonment, to be followed by supervised release for two years. She also was ordered to pay $20,000 in restitution to the CTA. Crump–Smith challenges the government's estimate of the amount she stole, claiming it was only $2,000. She claims that the restitution order was unfair in that it was improperly calculated and applied without regard to her financial situation. She appeals with respect to the restitution order only.

We turn now to a consideration of appellants' respective claims of error.

## II.

### (A) Narvaez

While it was estimated that Narvaez personally stole only about $9,000, the court calculated his sentence based on a total loss of at least $42,000 (the amount stolen by the known members of the conspiracy). This increased his base offense level by about six levels. Under the sentencing guidelines, those who embezzle money are subject to a chart found in § 2B1.1. Those who bribe are referred to a chart used for calculating sentences for fraud and deceit found in § 2F1.1 (pursuant to the bribery section of the guidelines, § 2C1.1). Both charts increase the base offense level by amounts corresponding to the amount of the money involved in the crime. By considering the loss to be $42,000, therefore, under § 2B1.1(b)(1)(H), Narvaez received a seven level increase in his base offense level, and under § 2F1.1(b)(1)(F), he received a five level increase. If, however, the court calculated his base offense level using only the $9,000 for which Narvaez was directly responsible, his sentence would be enhanced only by two levels under § 2F1.1(b)(1)(C) and by four levels under § 2B1.1(b)(1)(E). In imposing sentence, the court determined his base offense level to be enhanced by twelve levels instead of six.

Narvaez claims that the use of the $42,000 figure was inappropriate because the court assumed that Narvaez was part of a conspiracy with all of the other individuals who were involved in the scheme. Rather, Narvaez asserts that he was part of a conspiracy, but *only* with Szczecin, despite the fact that his plea agreement stated that he conspired with Szczecin *and others*. He therefore contends that, since there were multiple conspiracies in this scheme and not the single one found by the court, his sentence should have been based only on the loss directly attributable to him. We disagree.

"Whether a single conspiracy exists is a question of fact." *United States v. Townsend*, 924 F.2d 1385, 1389 (7th Cir. 1991). Accordingly, a finding of such a fact can be upset only by this Court if the finding is clearly erroneous. The government must prove only that the defendant joined in the agreement charged, and not with whom the defendant conspired. *Townsend, supra,* 924 F.2d at 1389. The proof can be circumstantial. *United States v. Durrive*, 902 F.2d 1221, 1225 (7th Cir.1990) (citing *United States v. Nesbitt*, 852 F.2d 1502, 1511

(7th Cir.1988), *cert. denied,* 488 U.S. 1015 (1989)).

█ Narvaez claims that there was no agreement between the other ticket clerks and himself, and therefore there could not be a single conspiracy. Moreover, he contends that the scope of the conspiracy was not reasonably foreseeable to him, and he should not be held liable for the entire conspiracy. As we held in *United States v. Edwards,* 945 F.2d 1387, 1403 (7th Cir.1991), *cert. denied,* 112 S.Ct. 1590 (1992), a defendant "may not be held responsible for the total [amount involved in the conspiracy] simply because he might have been aware that [the organizer] operated a large-scale . . . organization".

█ Evidence at the sentencing hearing, however, showed that Narvaez was in contact with others indicted in the conspiracy. He met with Szczecin and another co-defendant, Bruce Collum, to discuss how much money they were keeping from the CTA fares to help Szczecin determine how much money he should take in bribes from others who wanted to participate in the scheme. There is, therefore, at least circumstantial evidence that he knew that the crime involved more than his share of the takings. There is no evidence, however, that he tried to separate or remove himself from the scheme.

There also is evidence that Narvaez and Collum had a conversation in which they discussed how much they should bribe Szczecin. Based on these conversations, the court found it reasonably foreseeable that Narvaez knew that the conspiracy was larger in scope than his personal involvement.

Narvaez does not dispute the charges that he was aware that others were involved in the scheme. He does claim, however, that the scheme fell into the conspiratorial paradigm of a wheel in which Szczecin was the hub and he was merely one spoke, unconnected to any one else. *Townsend, supra,* 924 F.2d at 1391. He asserts that under this paradigm, "mere knowledge of the hub's activities, or those of the other spokes, is not enough to tie the conspiracy together". *Id.* Rather, Narvaez asserts that there were multiple conspiracies which had the same hub—Szczecin. Narvaez's assertion is without merit. The interaction he had with the other so called spokes ties the conspiracies together and creates sufficient evidence to support a finding that it was a single conspiracy.

Narvaez also relies on *Edwards, supra,* for the proposition that a person who joins a conspiracy for one event is not necessarily liable for the other events of the conspiracy. 945 F.2d at 1392. His reliance is misplaced, however, because the example in *Edwards* involved a person who was involved in only one drug shipment with a group involved in an ongoing conspiracy. The example made clear that the person was not guilty for the prior or subsequent shipments. *Id.* This is a temporal distinction which is inapplicable to the instant case. Narvaez was aware of the larger enterprise, and he continued to participate in it on an ongoing basis, not for a single event only. He was properly sentenced based on the entire amount stolen in the course of the conspiracy.

While Narvaez may have been responsible for only a relatively small amount of the money stolen from the CTA, and there is no evidence to show that he was involved in the organization of the scheme as a whole, he nevertheless was a member of the conspiracy. His sentence properly reflected the amount stolen in furtherance of the conspiracy. *United States v. Jackson,* 983 F.2d 757, 771 (7th Cir.1993). He did plead guilty to the conspiracy count. His plea agreement specifically stated that he and Szczecin "did knowingly conspire with each other *and others* to commit an offense against the United States. . . ." (emphasis added). This admission, along with the other evidence (limited as it may be), was sufficient to make him liable for the entire amount stolen during the course of the conspiracy.

We hold that his sentence was calculated properly by including a loss of more than $40,000 to the CTA.

### (B) *Crump–Smith*

█ Crump–Smith's sole claim on appeal is that the court erred in ordering her to pay $20,000 in restitution. She claims that the court used faulty reasoning in calculating the amount of the CTA's loss attributable to her and that its finding was clearly erroneous. She also claims that, in ordering her to pay

restitution, the court abused its discretion in failing to consider her lack of financial resources. For these reasons, she claims that the restitution order should be vacated. We disagree.

The court found that Crump–Smith was responsible for more than $20,000 of the CTA's loss. The court based this finding on numerous facts, including Crump–Smith's admission in her plea agreement that "she frequently stole $100 from CTA fares collected during her shift. Sometimes she stole more and sometimes she stole less." Considering that she worked full time for more than a year, it was perfectly reasonable for the court to estimate that she was responsible for a loss of more than $20,000. Also, the court considered the testimony of Bruce Collum who stated that Crump–Smith told him that she stole between $100–$150 a day, and on some days she stole as much as $300. Moreover, there were tape recorded conversations in evidence in which Crump–Smith admitted stealing more than $100 a day.

Crump–Smith challenges the amount attributed to her because at Narvaez's sentencing the court attributed $42,000 out of a $62,000 loss by the CTA to Narvaez and two other co-defendants, leaving only $20,000 attributable to both Crump–Smith and Szczecin. At her sentencing hearing, however, the court estimated that Crump–Smith was responsible for about $25,000 of the CTA's loss (estimating that she stole $100 a day for 250 days). This would make the total loss at least $67,000 rather than the $62,000 figure cited at Narvaez's sentencing. In view of these inconsistencies, she contends that the court's calculations could not have been based on reliable information as is required by 28 U.S.C. § 991 et seq. (1988 & Supp. 1990).

■ A court, however, may discharge properly its obligation to calculate the loss incurred for the purpose of guideline § 2F1.1 (the applicable guideline section for crimes of fraud and deceit) by making "a reasonable *estimate* of the range of the loss, given the available information". Commentary ¶ 8, Guidelines § 2F1.1 (emphasis added); *United States v. Haddon*, 927 F.2d 942, 951 (7th Cir.1991). We believe that the court followed the mandate of this Circuit and of the guideline.

The district court here acted reasonably, in determining her offense level under the guidelines, when it calculated the CTA loss attributable to Crump–Smith's participation. The court's reasonable estimate of the loss is not required to be the actual loss, but only the probable loss. *United States v. Schneider*, 930 F.2d 555, 558 (7th Cir.1991). The court's finding that $25,000 was a reasonable estimate of the loss attributable to Crump–Smith is a factual finding that will be overturned only if it is found to be clearly erroneous. *Haddon, supra,* 927 F.2d at 952. Based on the substantial evidence in the record indicating that Crump–Smith frequently stole at least $100 a day for one year, attributing $25,000 of the loss to her is quite logical and completely justifiable. We hold that the court did not err in making its reasonable estimate.

■ Crump–Smith also asserts that the court did not consider her financial situation when ordering restitution. She claims that she has no assets and a net worth of zero. She provides the sole support for her two children, ages 13 and 11. She appears to be asserting that the court abused its discretion in ordering restitution from someone in her financial situation.

Under 18 U.S.C. § 3664(a) (Supp.1990), when entering an order for restitution, a court shall consider, in addition to the loss to the victim, the financial resources of the defendant, as well as the defendant's financial needs and earning ability. The court shall also consider the needs of the defendant's dependents.

The record, including the transcript of the sentencing hearing, shows that the court here did take into consideration Crump–Smith's financial status. The court explicitly stated that it was ordering restitution, but was waiving the fine and prison fees because of Crump–Smith's financial status. Moreover, the restitution sum was to be paid at the discretion of the probation department.

Crump–Smith relies on several cases to support her claim that the court abused its discretion. The Tenth Circuit in *United*

*States v. Clark*, 901 F.2d 855 (10th Cir.1990), vacated an order of restitution because, in view of appellant's financial situation, paying more than $150,000 at once would be an undue hardship and the district court did not take that into consideration. In the instant case, however, the court did consider Crump–Smith's particular situation. At the time of her sentencing hearing, Crump–Smith, then 30 years old, had just started a full-time job as a production worker for the Tootsie Roll company. The fact that she was employed full-time made the restitution order less of a hardship, as her earning potential became a reality. Moreover, she was not required to pay the restitution in one lump sum, but rather her payment schedule was to be at the discretion of the probation department. "A defendant's present indigency ... does not bar a restitution order where 'the evidence indicates a defendant has some assets or earning potential and thus possibly may be able to pay the amount ordered.'" *United States v. McIlvain*, 967 F.2d 1479, 1481 (10th Cir.1992) (quoting *United States v. Rogat*, 924 F.2d 983, 985 (10th Cir.), *cert. denied*, 111 S.Ct. 1637 (1991)). The cases cited by appellant, which vacated orders of restitution for failing to consider the defendants' financial situations, are inapposite. Nothing in Crump–Smith's argument shows that there has been an abuse of discretion by the court in ordering restitution.

We hold that the restitution order will not be vacated.

### III.

To summarize:

The court did not err in including the amount stolen by the entire conspiratorial organization to determine appellant Narvaez's sentence. The court employed a reasonably reliable method in estimating the amount of the loss accountable to Crump–Smith and did not abuse its discretion in ordering her to pay restitution.

AFFIRMED.