UNITED STATES of America, Plaintiff–Appellant,

v.

Donald MAXWELL, Defendant–Appellee.

No. 97–1557.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 21, 1997.

Decided Dec. 4, 1997.

Robert W. Kent, Jr. (argued), Duane J. Deskins, Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellant.

Andrea E. Gambino (argued), Office of the Federal Defender Program, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, WOOD, Jr., and COFFEY, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendant Donald Maxwell was charged with mail fraud in violation of 18 U.S.C. § 1341. He pled guilty to Count I of the indictment and the remaining two counts were dismissed pursuant to a written plea agreement. He was sentenced to five months in custody and five months in home confinement and was ordered to pay $37,008 in restitution.

From January 1988 to March 1991 Maxwell was the accountant for a small Chicago commodities futures trading firm, Wiklund Trading, which bought and sold commodity futures and options at the New York Commodities Exchange and the Chicago Board of Trade. Commodities futures are bought and sold in units known as "contracts." A futures contract is a contract for the purchase or sale of any commodity for delivery in the future.

Wiklund Trading placed all orders for commodities contracts with Geldermann, Inc., a Chicago clearinghouse for commodities futures traded on the New York Commodities Exchange and the Chicago Board of Trade.

Maxwell's duties consisted of computing profits and losses for the five traders employed by Wiklund. He reconciled daily computer printouts from Geldermann and prepared daily statements summarizing the previous day's profits and losses.

In October 1989 Maxwell decided to become a trader himself. Mark Wiklund gave him permission to trade only two Standard & Poor 500 contracts at one time. Maxwell was to get a bonus of 50% of his profits and share 50% of his losses.

From January 1990 to March 6, 1991, Maxwell traded in excess of his limits and losses. To conceal his unauthorized trades and losses, Maxwell altered Geldermann's daily printout of Wiklund's trading activity. He whited-out the unauthorized trades and entered false numbers as to his trading level. Just prior to his termination he also deleted 400 of Wiklund's computer files and removed most of his daily summaries and Geldermann's daily printouts from Wiklund's offices.

Count I of the indictment charged that Maxwell violated 18 U.S.C. § 1341 which proscribes using the mails to carry out any scheme or artifice to defraud.

At the sentencing hearing the district judge and the parties disagreed with respect to the loss calculation. The government and presentence report argued that the victim's loss was $202,041 and the defense argued that it was $111,697.

Based on the $202,041 loss calculation, the presentence report and the government calculated that Maxwell had an adjusted offense level of 14 with a guidelines range of 18–24 months' imprisonment. However, according to the defendant's loss calculation, Maxwell had an adjusted offense level of 13 with a guidelines range of 12–18 months' imprisonment.

Instead of adopting either of these positions, the district court used only the gain made by Maxwell, namely, the two bonuses he received, as the loss amount and established it at $37,008. Based on this loss calculation, Maxwell had an adjusted offense level

of 12, and the district court sentenced him to five months' imprisonment and five months' home detention, causing the government to appeal. According to the evidence and pre-sentence report, the total dollar loss attributable to Maxwell was as follows:

$132,399—1990 loss for S & P 500 trading
  32,634—1991 loss for S & P 500 trading
  23,343—1990 bonus for S & P 500 trading
  13,665—1991 bonus for S & P 500 trading

$202,041  total loss

During the sentencing hearing, Maxwell twice stated that the government's overall loss figure was correct.

Maxwell's attorney challenged the government's loss amount and submitted that it totaled $111,679, which consisted of the amount hidden in the grain trading accounts ($50,000), plus Maxwell's combined 1990 and 1991 bonus ($37,008), plus the amount Maxwell concealed on some of his daily statements ($25,671) (App. 37, defendant's Br. 5).

Despite the foregoing calculations of government and defense counsel, the district court chose a loss figure of $37,008, consisting only of the sum of the bonuses that Maxwell had obtained in 1990 and 1991. The court attempted to justify its calculation by explaining:

> I have seen cases where people have stolen and embezzled and gotten $500, $800,000, a million dollars and through—for a variety of reasons end up with a sentence comparable to what the $200,000 loss of Mr. Maxwell would lead to. And I just don't feel that his crime was in proportion to what they did. (Sentencing Tr. 94–95.)

Thereupon government counsel protested, stating that defendant should be "accountable for what he did from January through December of 1990" and "not just merely his profit taking [the two bonuses] at the end" (Sentencing Tr. 103). Afterwards the court did not explain why it was permissible to place the loss at $37,008 when it was indeed $202,041 and when defense counsel proposed, at a minimum, a $111,679 figure.

At the sentencing hearing defendant admitted he had destroyed and erased and altered various records in order to cover his tracks and committed a crime that involved a lot of money (App.29, 30). He also admitted

that $202,000 was the right loss figure (App.23). Then Mr. Cohen, a certified public accountant and government witness, explained to the judge how the $202,000 loss was computed (App.33–34).

Next Mr. Wiklund explained that defendant misled him because "the days that he lost money he said that he didn't trade" (App.41). The court added that since they were not being accurately recorded, Wiklund "didn't know about the losings" and "couldn't check them" (App.42). Because defendant whited-out the middle of all buys and sells and also cut and pasted the records, what Wiklund saw did not show what was really taking place. On two days alone defendant lost $120,000 (App.42–43).

As a result of such testimony the court realized "There was effective deception for this whole period of time * * * at least 14 months" (App.43–44). Judge Andersen therefore concluded there had been "a couple hundred thousand dollar loss" (App.44) with no restitution from defendant (App.45). Mr. Wiklund chose to have defendant criminally tried so that he would "not be able to do this to somebody else" (App.47). He added that defendant had been using Wiklund as a bank and had been taking systematically $1,000 to $5,000 a month (App.49).

Subsequently the district judge noted that even defendant agreed that the postal inspector properly calculated the loss as $202,000 (App.52). He added that the language of the guidelines, in terms of a definition of loss, "literally says loss to the victim, which would point towards the 202" thousand (App.53). Then, without any explanation, the judge stated that he felt comfortable "measuring the loss at $37,008.00" (App.54), which was merely the sum of defendant's bonuses. Consequently the court reached an adjusted offense level of 12 and sentenced Maxwell to five months' imprisonment, five months' detention and restitution of his bonuses of $37,008. This was error.

## Discussion

■ Offenses involving fraud or deceit with a loss of more than $200,000 are covered by Guideline § 2F1.1(b)(1)(I) with an 8 in-

crease in offense level added to the loss offense level, where as here the loss exceeds $200,000, as the government, presentence report and defendant all agreed.

Application Note 7 to the Commentary on § 2F1.1 states that loss is the value of the property unlawfully taken, here $202,041. The amount of loss to Wiklund Trading attributable to Maxwell consisted of the following:

```
$132,399—1990 loss for S & P 500 trading
  32,634—1991 loss for S & P 500 trading
  23,343—1990 bonus for S & P 500 trading
  13,665—1991 bonus for S & P 500 trading
```

$202,041    total loss

Maxwell twice affirmed to the court that this loss figure was correct (App.16, 23). The court never explained why it determined that the loss to Wiklund only consisted of the bonuses paid to Maxwell or why it was permissible to confine the loss to the bonuses. As was explained in *United States v. Johnson*, 16 F.3d 166, 170 (7th Cir.1994):

> When calculating loss, Guideline § 2F1.1 directs the district court to increase a defendant's offense level based on the greater value between the actual loss suffered and the intended or probable loss which the defendant attempted to inflict.

Here $202,041 was clearly the loss suffered by Wiklund, and the trial judge was not authorized to substitute a lower amount.

Neither the district court nor defendant has shown that it was allowable to use defendant's gain—here the two bonuses—as the measure of Wiklund Trading's loss. The sentence of five months in custody and five months home confinement was impermissible because sentencing determinations "must be based on policies found in the guidelines themselves rather than the personal penal philosophy of the sentencing judge." *United States v. Frazier*, 979 F.2d 1227, 1231 (7th Cir.1992).

The sentence is vacated and the cause is remanded to the district court for resentencing based on the $202,041 loss to the victim as the basis for calculating the offense level enhancement under Guideline § 2F1.1(b)(1)(I).