139 F.3d 902
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff-Appellee,
v.
Martin O'SHIELD, Defendant-Appellant.
 No. 97-2493.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 28, 1998.
Decided Mar. 6, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 95 CR 480 Charles R. Norgle, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. DANIEL A. MANION, Hon. MICHAEL S. KANNE, Circuit Judges.
 
 ORDER
 
 1
 Pursuant to a written plea agreement, Martin O'Shield pleaded guilty to one count of conspiracy and one count of knowingly possessing with the intent to defraud two scanning devices in violation of 18 U.S.C. § 371 and 18 U.S.C. § 1029(a)(6)(A). O'Shield was sentenced to 48 months' incarceration on each count to be served concurrently. On appeal, he challenges the amount of loss for which the district court found he was responsible under U.S.S.G. § 2F1.1, the Sentencing Guideline for offenses of fraud or deceit.
 
 
 2
 O'Shield operated a business selling cloned cellular telephones and cloning equipment. O'Shield cloned cellular phones by taking a valid ESN/MIN[1] combination issued to a legitimate cellular telephone subscriber and reprogramming the ESN/MIN number onto another cellular phone. This process would allow a nonsubscriber to use the cloned phone while the cellular provider would bill the legitimate account holder. Cellular providers usually discover the fraud within a billing cycle; therefore, the purchaser of the cloned phone may receive free and anonymous telephone service for approximately one month.
 
 
 3
 After O'Shield pleaded guilty, the district court held three evidentiary hearings on January 29, April 11, and June 11, 1997, to determine the amount of loss under U.S.S.G. § 2F1.1. At the evidentiary hearing on April 11, Thomas McClure testified that he was the Director of Fraud Management for the Cellular Telecommunications Industry Association (CTIA), which represents 95 percent of the wireless license holders who provide mobile communications to over forty million cellular phone subscribers. As Director of Fraud Management, McClure was responsible for the industry's fraud initiations and the fraud task force. In addition, he oversaw the CTIA's professional training of law enforcement officers, the CTIA's laboratory where cloned phones were examined to insure better security, and intelligence investigations. McClure had also co-authored several articles and manuals concerning telecommunications fraud.
 
 
 4
 McClure testified that based on CTIA members' loss data, the average home cloning loss per ESN/MIN was $500 and the average roaming loss was $1,500--an overall average of $1,000 per ESN/MIN combination in 1995. McClure stated that the roaming clone dollar estimations were hard losses based on the average amount of the checks that were written from one cellular carrier to another through a net settlement program called "Cybernet." At the end of the hearing, the district court concluded that McClure was a credible witness and that the information he provided was reliable and trustworthy for sentencing.
 
 
 5
 On appeal, O'Shield challenges the information the district court considered in determining the loss figure, i.e., $1,000 per ESN/MIN combination, asserting that McClure's testimony and the basis of his calculations did not have sufficient indicia of reliability as required under U.S.S.G. § 6A1.3. See United States v. Messino, 55 F.3d 1241, 1254 (7th Cir.1995). O'Shield also argues that the basis of the figure is so unreliable as to be inaccurate, and thus, a violation of his right to due process. See United States v. Wicks, No. 96-2465, slip op. at 8-9 (7th Cir. Dec.22, 1997). Because the district court concluded that McClure was a credible witness and that the information he provided was reliable and trustworthy for sentencing purposes, O'Shield carries a heavy burden challenging McClure's testimony and the evidence upon which he based his calculations due to the substantial deference this court gives to the sentencing judge's credibility determinations. See United States v. Hickok, 77 F.3d 992, 1007 (7th Cir.), cert. denied, 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996) (citation omitted).
 
 
 6
 We conclude that there is ample evidence in the record supporting the district court's finding of McClure's credibility and the reliability of his testimony. The prosecution established McClure's experience and expertise in cellular phone fraud investigations and McClure testified at length regarding the basis of the fraud loss average of $1,000 per ESN/MIN combination. McClure testified that after a fraud task force was established in 1991, the various cellular phone providers came together under the CTIA "umbrella" to collectively work on uniform policy issues that affect the entire industry. McClure also established an initiative to collect fraud losses per ESN/MIN combination, which involved sending letters to all CTIA members and collecting "loss" data. This data was supplemented with information supplied by the various cellular carriers' fraud managers with whom he met on an every-other-month basis. Through this process, the CTIA established industry standards and a benchmark for loss calculations. McClure also reported that the industry benchmark of the average loss standard had been published in numerous trade journals and was part of an awareness campaign that the CTIA had spearheaded over the years.
 
 
 7
 O'Shield does not set forth any reason why McClure's testimony is not credible, nor did he submit any evidence to support an alternative calculation of loss. What O'Shield does argue is that the evidence the district court relied upon was "flimsy and uncertain" and based on pure speculation. However, as the evidence indicates, McClure based his calculations on broad data collection including dollar amounts paid via the net settlement program involving actual "hard" losses to the cellular providers. McClure's loss calculation is the industry's benchmark to which cellular providers compared their own loss experience.
 
 
 8
 Nonetheless, O'Shield asserts that the loss figure relied upon by the district court lacked scientific precision. Section 2F1.1, however, does not require the district court to precisely determine the amount of loss. U.S.S.G. § 2F1.1, comment. (n. 8). Instead, the district court is given great latitude in calculating a reasonable estimate of the loss from the information made available and may base the loss amount on general factors including the nature and duration of the conduct. United States v. Ross, 77 F.3d 1525, 1552 (7th Cir.1996). Here, the prosecution provided reliable, specific evidence estimating the volume of unauthorized calls and transactions made by O'Shield. The prosecution and probation office calculated the number of ESN/MIN combinations used in O'Shield's fraudulent operation in its recommendation to the district court. The number of ESN/MIN combinations, over 3,000, was multiplied by the industry loss standard of $1,000 per ESN/MIN combination. This court has previously concluded that estimates involving statistical calculations may be reasonable for purposes of § 2F1.1. See United States v. Narvaez, 995 F.2d 759, 764 (7th Cir.1993). Thus, not only was the district court's estimation of loss reasonable, but the underlying factual basis of the calculation was reliable, supporting the accuracy of the facts underlying the sentence.
 
 
 9
 Next, O'Shield asserts that the district court erred by using the intended loss figure, as opposed to the actual loss figure, in calculating the loss amount under § 2F1.1(b)--an argument which contradicts this circuit's precedent. See United States v. Maxwell, 131 F.3d 622, 624 (7th Cir.1997). Based on a Tenth Circuit case, O'Shield maintains that if there is actual loss, the proper standard under § 2F1.1 is the actual loss, not intended loss. See United States v. Santiago, 977 F.2d 517, 524 (10th Cir.1993). Although the Santiago court states that the actual loss should be used, the Tenth Circuit clarified that "[i]f there was no actual loss or if a probable or intended loss was greater than the actual loss, the larger figure will be used." Id. (citing U.S.S.G. § 2F1.1, comment. (n.7)). By articulating part of the Tenth Circuit's standard and quoting it out of context, O'Shield's attempt to argue for an actual loss calculation is misleading.
 
 
 10
 O'Shield also cites United States v. Marlatt, 24 F.3d 1005 (7th Cir.1994), for the proposition that the district court may not base its calculation on incidental and consequential damages when determining the amount of loss. Indeed, this is a correct statement of the law. See id. at 1007-08. O'Shield, however, does not articulate what incidental or consequential damages were implicated in the court's calculation. Furthermore, as McClure testified, the losses used in the CTIA's calculation of ESN/MIN combination average were actual or hard losses, based on the loss incurred by the cellular carriers, i.e., the billable air time that the cellular providers were unable to charge.
 
 
 11
 Because the district court considered reliable and accurate evidence in making its loss calculations, we conclude that the district court did not err in its finding of the amount of loss. See Ross, 77 F.3d at 1552. Therefore, the district court judgment is
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 Cellular service providers and phone manufacturers assign each cellular phone a Mobile Identification Number (MIN), which is the ten-digit telephone number, and an Electronic Serial Number (ESN)