142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Steve H GREAM, Defendant-Appellant.
 No. 97-3852.
 United States Court of Appeals,
Seventh Circuit.
 .
Argued March 14, 1998.
Decided March 19, 1998.
 
 Appeal from the United States District Court for the Southern District of Indiana, New Albany Division, No. NA 97-2-CR-01-D/N, S Hugh Dillin, Judge.
 Before Hon WALTER J. CUMMINGS, Hon. JESSE E. ESCHBACH, and Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 Steve Gream entered a plea of guilty, pursuant to a written plea agreement, to the interstate transport of stolen goods, 18 U.S.C. § 2314, after stealing spools of aluminum and copper wire, transporting them from Indiana to Kentucky, and selling them Gream was sentenced to 30 months' imprisonment, and ordered to pay a $6,000 fine and $15,000 in restitution He appeals from the sentence, alleging that the district court failed to make a specific finding as to the value of the stolen wire, see Fed.R.Crim.P. 32(c)(1), that the loss exceeded $800,000, thereby requiring the addition of 13 offense levels pursuant to the United States Sentencing Guidelines (U.S.S.G.) § 2B1.1(b)(1)(N).
 
 
 2
 Over a period of three to five years, Gream and codefendant Wilbert Hunter, an employee of Public Service Indiana (PSI), a subsidiary of Cinergy Corporation, repeatedly stole wire from PSI and sold it as scrap metal The FBI began a surveillance of the PSI facility. When wire ordered by Hunter under the guise of his employment as storekeeper with Cinergy was delivered to PSI in Clarksville, Indiana, Gream would take the wire and sell it in Kentucky. For example, in the early morning hours of September 17, 1997, the FBI agents watched as Hunter unlocked the gate and allowed Gream (a local electrical contractor) and two of his employees to load a shipment of wire into rental trucks Gream and his men then drove the trucks to Portland Recycling, Inc., a scrap metal business in Kentucky, and sold the 26,000 pounds of wire (after removing the wire from its spools) as scrap wire for $15,636. Gream was arrested that day and charged with unlawful transportation of the wire in interstate commerce.
 
 
 3
 The FBI were later informed by Hunter that similar operations by Gream and Hunter had taken place "numerous times" each year, for three to five years The FBI agents were able to trace Gream's truck rental records and match them to the dates of scrap wire sales to Portland Recycling Between April 1992 and February 1997, Gream sold scrap wire to Portland Recycling 56 times. In addition, he made sales to the Metal Center, another scrap dealer in Kentucky.
 
 
 4
 The written plea agreement provided that there was "no agreement[ ] with regard to what sentence be imposed," and "both sides may introduce evidence and make argument to the Court in that regard." There was also "no agreement[ ] as to fine or restitution." (Plea Agreement, p. 2 p 2.) In addition, there was no agreement on the amount of loss. "The parties understand the government may introduce evidence and make argument contending the loss exceeds $800,000 and subject to a thirteen level increase pursuant to § 2B1.1. (b)(1) N), while the defendant may introduce evidence and make argument contending the loss is far less." (Plea Agreement, p. 3 p 3(a)(1).) Gream waived his right to appeal from the sentence imposed by the court only if the sentence was "computed on the basis of seventeen offense levels or less." (Plea Agreement, p. 5 p 4.)
 
 
 5
 Cinergy prepared 59 exhibits, including loss tables, and the probation officer and sentencing judge based their loss calculations on these materials. The district court adopted the findings of the PSR, which had determined that the amount of loss exceeded $800,000, thus requiring an increase of 13 offense levels, bringing Gream to an offense level of 18. The sentencing range was 27-33 months, and the final sentence imposed was 30 months' imprisonment.
 
 
 6
 Gream first argues that the district court failed to make the proper written findings. Rule 32(c)(1) of the Federal Rules of Criminal Procedure requires that a sentencing judge, "[f]or each matter controverted, ... make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." In the present case, the district court adopted the findings of the PSR: "[T]he Probation Department has come up with a total offense level of 18 and a criminal history category of I, and I think that that is justified." This is an acceptable means of resolving disputed issues raised by the defendant. United States v. Hall, 109 F.3d 1227, 1234 (7th Cir.1997); United States v. Taylor, 72 F.3d 533, 547 (7th Cir.1995), United States v. Coonce, 961 F.2d 1268, 1278 (7th Cir .1992).
 
 
 7
 Gream next challenges the calculations used by the district court Under the United States Sentencing Guidelines, stolen goods valued at under $500,000 results in an increase in offense level by 12 levels, and goods valued at $500,000 or more earns an increase in offense level by 13 levels U.S.S.G. § 2B1.1(b)(1)(E). Determination of the amount of loss is a finding of fact reviewed for clear error, United States v. Smith, 897 F.2d 909, 911 (7th Cir.1990). The definition of loss is a question of law reviewed de novo, United States v. Holiusa, 13 F.3d 1043, 1045 (7th Cir.1994): United States v. Loscalzo, 18 F.3d 374, 376 (7th Cir.1990). In the present case, the scrap value of the wire was determined to be approximately 50% of the total cost to Cinergy As the government's sentencing memorandum explains:
 
 
 8
 The "Projected Cost to Cinergy" assumes that the scrap value is about 50% of the total cost to Cinergy. This assumption is based upon the fact that the total scrap value (Exhibits 1-15) is 50% of the total loss to Cinergy (Exhibits 1B-15B), as set out in Table 1.
 
 
 9
 Thus, the cost of the transactions from September 1995 to February 1997 were multiplied by two Portland Recycling paid approximately $442,496.85 for the scrap wire it bought from Gream. Cinergy doubled that amount, for a total loss amount of $887,454,42.[1]
 
 
 10
 At sentencing, Gream objected to the $887,454 loss figure on the grounds that some of the wire delivered to Portland Recycling was not stolen from PSI, but instead was legitimately removed from residences on which Gream had performed work as an electrical contractor, or was from his own home, or was given to him "routinely" by a friend, and some of the wire stolen from Portland Recycling was in fact scrap (not new) wire and thus should not be valued as new wire. Gream offered no evidence at the sentencing hearing to support these assertions and, given that complete lack of evidence, the district court was not required to alter its findings. It was reasonable to base the amount of loss on the match between the amount of wire stolen from Cinergy/PSI and the amount bought by the Kentucky companies. "The loss ... may be inferred from any reasonably reliable information available, including the scope of the operation." U.S.S.G. § 2B1.1, Application Note 3. It is not enough for the defendant to "simply deny[ ] the PSR's truth." United States v. Mustread, 42 F.3d 1097, 1102 (7th Cir.1994). See also United States v. McKinney, 98 F.3d 974, 982 (7th Cir.1996).
 
 
 11
 Gream also objected to the methodology used by the government to calculate the loss A loss "need not be determined with precision, and may be inferred from any reasonably reliable information available, including the scope of the operations." U.S.S.G. § 2B1.1, application note 3. The assigned value may be the probable, not actual, loss. United States v. Narvez, 995 F.2d 759 (7th Cir .1993), United States v. Schneider, 930 F.2d 555, 558 (7th Cir.1991). Here, the calculation of the amount of loss began with the money that Gream received for 15 loads of wire sold by him during the relevant period. However, he led Portland Recycling to believe that the wire was only "scrap," and thus he received much less than the true value of the "new" wire that Portland Recycling was receiving. The proper inquiry focuses on the victim's loss, not defendant's personal gain. United States v. Colello, 16 F.3d 193, 197 (7th Cir.1994). Thus, it was proper to look at Cinergy's loss, not Gream's gain Cinergy reconstructed its loss through invoices of shipments, plus labor and transportation costs. A chart summarizing these costs shows that Cinergy's loss was approximately twice that of Gream's gain, along with 58 other supporting exhibits. Faced with this detailed and elaborate reconstruction of Cinergy's financial loss, Gream did not offer any evidence at the sentencing hearing that the reconstruction or calculations were erroneous. This method of calculating loss is far from a "nebulous eye-balling" denounced by this court in previous cases. See, e.g., United States v. Miner, 127 F.3d 610, 615 (7th Cir.1997), United States v. Duarte, 950 F.3d 1255, 1265 (7th Cir.1991). Consequently, we find no clear error in the district court's calculation of loss.
 
 
 12
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Deducted from this amount was $1,998.55, the value of one roll of wire that was recovered, and scrap wire valued at $15,636, which was also recovered. The net loss, then, was $869,819.87