# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-1551

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SCOTT A. GRAMER,

*Defendant-Appellant.*

———————

**Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP01-CR-0090-02-B/F—Sarah Evans Barker**, *Judge.*

———————

ARGUED SEPTEMBER 10, 2002—DECIDED OCTOBER 16, 2002

———————

Before FLAUM, *Chief Judge*, and BAUER and MANION,
*Circuit Judges.*

BAUER, *Circuit Judge.* The federal government indicted
Scott Gramer on five counts of mail fraud, a violation of 18
U.S.C. § 1341. He pleaded guilty to all five counts pursuant
to a plea agreement. The district court sentenced Gramer
to 21 months incarceration, followed by two years of super-
vised release. Gramer contends that the district court's
application of § 2F1.1 of the Sentencing Guidelines was in
error. Specifically, he argues that the sentence does not
reflect his limited participation in the scheme and that the
factual findings adopted by the court are irreconcilable. For

the reasons that follow, we find the district court's sentencing determination was not in error.

BACKGROUND

Scott Gramer, a manufacturing engineer, began working for Indiana Mills & Manufacturing, Inc. (IMMI) in 1994. IMMI is a manufacturing company in Westfield, Indiana, which develops seat belts, child seats, and off-road machinery. In July 1996, Harvey Adair, Jr., a fellow IMMI employee, devised a scheme to defraud IMMI. According to the plan, Adair would pretend to send broken pieces of IMMI machinery to non-existing companies for repairs. Adair recruited Gramer to sign consents for the phoney purchase orders. An employee's signature was necessary to validate the payment of the false claims.

In addition to Gramer, Adair recruited three additional IMMI employees, Jack A. Reid, David N. Cook, and Neal Richardson, to pose as outside vendors who would purportedly repair the broken machine parts.

Gramer's importance to the success of the overall scheme cannot be understated. Adair recruited Gramer to be, in addition to Adair himself, another employee who could sign off on the purchase orders. It was essential to the success of the plan that no single person's name appear on all of the paperwork as authorizing repairs or approving payments. With Gramer in the scheme, Adair was able to alternate between the two signators so as not to raise suspicion. Gramer approved some of the repair requests and some of the payments for all the vendors involved in the scheme.

The proceeds from the scheme were split among those involved relative to their amount of participation in the fraudulent activities. Each person who participated in obtaining proceeds from a particular purchase order and

invoice received a percentage ranging from 25% to 50% of the proceeds. Based on the submission of fraudulent invoices, which continued until the summer of 2000, IMMI paid a total of $430,752 to the individuals or businesses identified in the invoice. Of the $430,752 unlawfully gained, Adair, as the mastermind, received $355,175. Gramer received $51,999 for his work in the fraud, while Reid received $1,378, Richardson, $6,541, and Cook $22,960.

On November 5, 2001, Gramer pleaded guilty to five counts of mail fraud. The district court ordered Gramer to serve 21 months incarceration, followed by two years of supervised release. In addition, the district court ordered him to pay restitution in the amount of $51,999. On appeal, Gramer asserts that the district court incorrectly applied § 2F1.1 of the Sentencing Guidelines in assessing an increase of nine offense levels over the basic offense level of six. More specifically, Gramer argues that the figures used by the district court in determining his sentence cannot be reconciled with its finding that a single scheme existed.

## ANALYSIS

We review the district court's calculation of the loss incurred in the defendant's offense under U.S.S.G. § 2F1.1 for clear error. *United States v. Dillard*, 43 F.3d 299, 309 (7th Cir. 1994). "A factual determination is clearly erroneous only if, after considering all the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. Irby*, 240 F.3d 597, 599 (7th Cir. 2001) (quoting *United States v. Messino*, 55 F.3d 1241, 1247 (7th Cir. 1995)).

Under U.S.S.G. § 2F1.1, a defendant's sentence is based upon the amount of loss the defendant's scheme caused to his victims. *See* U.S.S.G. § 2F1.1 Application Note 8. Under the Guidelines, Gramer's base offense level for violating

18 U.S.C. § 1341 is level six. U.S.S.G. § 2F1.1(a). However, § 2F1.1(b)(1)(J) provides for an addition of nine offense levels if the loss in the total scheme in question is greater than $350,000 but less than $500,000. The district court found that Gramer was involved in a single overarching scheme resulting in a total loss to IMMI of $430,752; therefore, in accordance with U.S.S.G. § 2F1.1(b)(1), the district court added an additional nine levels to the base offense level.

Gramer asserts that the district court's increase of nine offense levels was the result of an erroneous interpretation of the figures adopted by the court. He also contends that the numbers which the court used do not support its finding that a single scheme took place. Instead of a single scheme, Gramer contends there were multiple schemes and that he should be sentenced only for the scheme he participated in. He concludes that if a single scheme truly occurred then the amount attributable to him would have been greater. Gramer says that, because he and the other co-workers accumulated a combined total of $82,878 while Adair made off with $355,175, then Adair either committed some of the fraudulent activity on his own or there were additional conspirators whom the authorities never discovered, resulting in a disproportionate sentence for Gramer.

## A. *Applying U.S.S.G. § 2F1.1*

Gramer supports his argument that the district court erred by highlighting inconsistencies between the numbers the district court relied upon in reaching his sentence. The district court adopted the figures set forth by the probation department in its report. The district court found that Gramer accumulated $51,999 while Adair accumulated

$355,175.[1] The court also determined that each of the participants in Adair's scheme earned between 25% and 50% of the value of any transaction in which they took part. Finally, the court found that the amount of loss to IMMI was $430,752, an amount to which Gramer stipulated.

As a cursory glance at these numbers reveals, the percentages of 25% to 50% of compensation for each transaction participated in are not accurate in light of the large returns taken by Adair and the lesser amounts taken by his recruits. While Gramer is correct that some of the fraudulent transactions netted the recruits less than 25% of the proceeds, this miscalculation is not merely harmless, but meaningless. It is unavailing precisely because Gramer himself stipulated that the fraud netted a total amount of $430,752. This amount, $430,752, was the sole basis for the addition of nine offense levels under U.S.S.G. § 2F1.1(b)(1). And the district court found that there was a single, over-reaching scheme. So the percentage of compensation for Gramer is irrelevant; once the court found that Gramer was thoroughly involved in the scheme, he became liable for all of the losses that the group's fraudulent activity entailed. *United States v. Dillard*, 43 F.3d 299, 310 (7th Cir. 1994); *United States v. Navarez*, 995 F.2d 759, 763 (7th Cir. 1993). The district court tacked on the additional offense levels based on the amount the scheme netted as a whole, $430,752, not because Gramer received a certain amount. The basic premise of U.S.S.G. § 2F1.1(b)(1) is the determination of the value of the money or property unlawfully taken from the victim. *See* U.S.S.G. § 2F1.1 Application Note 8.

---

[1] The court also noted that the three other individuals involved in the scheme netted a combined total of $30,879.

B. *Finding a Single Scheme*

In presenting his argument that the court erred in its interpretation of the figures it used, Gramer also contends that the court should have found multiple schemes. In considering this argument, we review the district court's factual findings in applying the Sentencing Guidelines for clear error. *United States v. Martin*, 287 F.3d 609, 616 (7th Cir. 2002). In finding that a single scheme existed, the court held Gramer liable for all the reasonably foreseeable actions and consequences of those participating in the fraud. *United States v. Blackwell*, 49 F.3d 1232, 1235 (7th Cir. 1995). Gramer claims that he was involved in a separate, single scheme which resulted in a net loss to IMMI of $104,000, and his sentence should be determined using this figure, not $430,752. Essentially, he contends that his loss should be based solely on the transactions in which he participated. He is wrong.

Gramer's participation was essential to the success of the scheme because with multiple signators no single person's name appeared on all of the paperwork as authorizing repairs or approving payments. Gramer's interaction with, and dependence on, the other co-defendants demonstrates there was a single overarching scheme to defraud IMMI. As in *United States v. Narvaez*, 995 F.2d 759 (7th Cir. 1993), there is evidence which shows Gramer was in contact with each participant in the scheme; he approved purchase and repair orders from Reid, Richardson, and Cook, and worked in agreement with Adair and under his supervision. Gramer's role as an additional signator played a key role in the long (four years) success of the scheme. Gramer's involvement with all the participants and his important position solidifies that Gramer was involved in a single scheme for which he shares full responsibility.

Even assuming that Gramer is correct in his assertion that other unnamed participants were involved in the

scheme, Gramer did not have to be aware of other people's identities or their acts, so long as the evidence showed that Gramer participated in the scheme. *United States v. Adeniji*, 221 F.3d 1020, 1026 (7th Cir. 1999); *United States v. Silva*, 781 F.2d 106, 108-09 (7th Cir. 1986). In situations involving multiple criminal participants, the Sentencing Guidelines instruct the courts to consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." *United States v. Blackwell*, 49 F.3d 1232, 1235 (7th Cir. 1995); *United States v. Smith*, 897 F.2d 909, 910-11 (7th Cir. 1990).

Gramer's authorization of approving the requisite paperwork was part of the overall scheme devised and implemented by Adair. While Gramer may not have been the mastermind of the plan or the largest benefactor of the fraud, his fraudulent actions furthered the goal of siphoning funds from IMMI. The district court's sentencing of Gramer "properly reflected the amount stolen in furtherance of the [scheme]." *United States v. Narvaez*, 995 F.2d 759, 763 (7th Cir. 1993). While Adair personally received a much greater portion of the final $430,752 than his coworkers, his longer sentence reflected that fact. Whether Gramer took away 10% from each transaction or 50% is immaterial; Gramer was guilty of participating and profiting in a single scheme to defraud IMMI.

## CONCLUSION

While the district court may have erred in the percentages of each transaction obtained by the participants, there is no claim that the district court erred in the total amount the scheme collected. In the presentence investigation report, the government explained in great detail how it calculated the loss suffered by IMMI through the fraud. Gramer never disputed the amount, stipulating to this figure during the sentencing hearing. The district court acted

reasonably and correctly when it calculated the losses attributable to Gramer's participation. In addition, Gramer's argument that multiple schemes existed is supported neither by the facts nor the figures.

Because the district court properly sentenced the defendant, we AFFIRM the defendant's sentence.

A true Copy:

   Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*